PEOPLE v TEJEDA

Docket No. 104184. Submitted June 14, 1989, at Grand Rapids. Decided December 18, 1989.

Thomas Robert Tejeda was convicted by an Ottawa Circuit Court jury of possession of more than 50 grams, but less than 225 grams, of cocaine. On the basis of a conviction for heroin delivery in 1975, defendant was charged and subsequently convicted of being a habitual controlled-substance offender following a bench trial. The trial court, James E. Townsend, J., sentenced defendant to twenty to forty years of imprisonment. The circumstances which led to defendant's conviction began when a United Parcel Service employee discovered cocaine in a package addressed to Douglas Raymond of Holland, Michigan. The package was sent to Detective Robert Simmons of the Holland Police Department. Simmons conducted a test which verified that the package contained 153 grams of cocaine. Simmons and officers of the West Michigan Drug Enforcement Team decided that the package should be delivered to Raymond by an officer dressed as a UPS employee. After Raymond received the package, his house was searched pursuant to a warrant. The package of cocaine was recovered inside the house, and Raymond was arrested. Raymond denied ownership of the package and indicated that he was merely a courier who was to deliver the package to its owner, defendant Tejeda. A decision was made to have Raymond, while wired with a hidden radio transmitter allowing the police to monitor conversation, deliver the package to defendant at defendant's store. Simmons prepared the affidavit in support of the request for the warrant authorizing the transmitter. While Simmons waited at the magistrate's office to secure a warrant for a search of defendant's store as soon as the delivery was made, Raymond delivered the package to defendant. Police officers monitoring Raymond immediately radioed Simmons of the delivery. Simmons prepared the affidavit in support of the

REFERENCES

Am Jur 2d, Searches and Seizures §§ 64, 65, 69.

Propriety of considering hearsay or other incompetent evidence in establishing probable cause for issuance of search warrant. 10 ALR3d 359.

request for the search warrant. Defendant was arrested after a search of his store yielded the cocaine package. On appeal, defendant challenged the validity of the affidavits supporting the warrants for the hidden transmitter and the search of his store. Defendant argued that the affidavits failed to meet the requirements of MCL 780.653; MSA 28.1259(3).

The Court of Appeals *held:*

Although a search warrant may be issued on the basis of an affidavit which contains hearsay, MCL 780.653; MSA 28.1259(3) imposes certain requirements on what the affidavit must contain in order for a valid warrant to be issued on the basis of that affidavit. Specifically, an affidavit based on hearsay must meet the following criteria: (1) the affidavit, when based on informant-supplied information, must contain affirmative allegations that the informant spoke with personal knowledge; (2) the affidavit must set forth facts from which one may conclude that the informant is credible; and (3) the information must be shown to be reliable. The affidavits in this case did not meet these requirements. Nothing in the affidavits established the credibility of the informant, Douglas Raymond. There was also nothing in the affidavit relating to the warrant for the transmitter which showed that the information was reliable. The affidavits in this case did little more than show that the police had a strong case against Raymond and that Raymond was willing to implicate defendant.

Reversed.

GRIFFIN, J., dissented and would hold that the affidavits meet the requirements of MCL 780.653; MSA 28.1259(3), as amended by 1988 PA 80, which was enacted after the warrants in this case were issued to require, in cases where the informant is named, only that the affidavit contain affirmative allegations from which the magistrate may conclude that the informant spoke with personal knowledge of the information he supplied to the affiant. Judge GRIFFIN views the amendatory act to be remedial and procedural in nature and he would therefore hold the same to have retroactive application to this case. In addition, he would hold that the affidavits, when reviewed under the "totality of circumstances" test, are not in violation of the Fourth Amendment as they establish sufficient probable cause. Finally, he would hold that even if the affidavits were in violation of the Fourth Amendment, the good-faith exception to the Fourth Amendment's exclusionary rule would apply in this case. Judge GRIFFIN would affirm defendant's conviction.

SEARCHES AND SEIZURES — SEARCH WARRANTS — PROBABLE CAUSE — AFFIDAVITS.

An affidavit offered to show probable cause why a search warrant

should issue, if it contains information supplied to the affiant by an informant, must contain affirmative allegations that the informant spoke with personal knowledge and set forth facts from which one may conclude that the informant is credible; additionally, the information must be shown to be reliable (MCL 780.653; MSA 28.1259[3]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Wesley J. Nykamp,* Prosecuting Attorney, and *Jane L. Patterson,* Assistant Prosecuting Attorney, for the people.

*Vlachos & Hurley* (by *John R. Hurley*), and *Anthony J. Corizzi,* for defendant.

Before: HOLBROOK, JR., P.J., and SAWYER and GRIFFIN, JJ.

SAWYER, J. Defendant was convicted, following a jury trial, of possession of more than 50 grams, but less than 225 grams, of cocaine. MCL 333.7403(1) and (2)(a)(iii); MSA 14.15(7403)(1) and (2)(a)(iii). On the basis of a prior conviction for delivery of heroin in 1975, defendant was also charged as a habitual controlled-substance offender under MCL 333.7413(2); MSA 14.15(7413)(2). Defendant was convicted as a habitual offender following a bench trial. Thereafter, he was sentenced to a prison term of twenty to forty years. He now appeals and we reverse.

The circumstances giving rise to defendant's conviction began in Miami, Florida. Detective Edward Pijuan of the Metropolitan Dade Police Department in Miami testified that, on March 16, 1987, he received a telephone call from an employee of the United Parcel Service who told Pijuan that he had discovered some contraband that was being shipped. Pijuan went to the UPS office where he was presented with an opened package that contained approximately 154 grams of co-

caine. The package was addressed to Douglas Raymond in Holland, Michigan. After Pijuan contacted Detective Sergeant Robert Simmons of the Holland Police Department, it was agreed that Pijuan would send the package to Simmons by Federal Express.

Simmons testified that he received the package via Federal Express on March 17, 1987. Simmons conducted a test which verified that the substance contained in the package was cocaine. He weighed the cocaine at 153 grams. Simmons then contacted Detective First Lieutenant Robert J. Bertee of the Michigan State Police. Bertee was in charge of the West Michigan Drug Enforcement Team (WEMET). Simmons and Bertee, together with Detective Lieutenant Wesley Haney of WEMET, arranged a controlled delivery of the package to Raymond through the aid of UPS. Specifically, Haney dressed as a UPS employee and delivered the package to Raymond.

After the package was delivered to Raymond, a search warrant was obtained for Raymond's residence. Simmons, Bertee, Haney, and a number of other officers executed the warrant. A search of the premises revealed the UPS package behind a stereo and Raymond was arrested. He was told that he could face a possible twenty to forty years in prison and it was at that time that Raymond told Bertee that the package did not belong to him and that he was only the middleman. According to Raymond, he told the officers that the package belonged to defendant.

Among those present during the search was an assistant prosecuting attorney who consulted with Bertee and reached an agreement with Raymond whereby Raymond would receive a more lenient sentence if he would agree to cooperate in a controlled delivery of the package to defendant. Ray-

mond made arrangements to deliver the package. Raymond also testified that he had made similar deliveries twice in the past.

Simmons testified that he was instructed to return to the police department and prepare a *Beavers*[1] warrant. The *Beavers* warrant was obtained for the purpose of putting a wire on Raymond to monitor his conversation with defendant.

The *Beavers* warrant was obtained, Raymond was wired, and he made the delivery of the package to defendant. Bertee then radioed Simmons, who was waiting at the magistrate's office, informing Simmons of the delivery. Simmons then obtained another warrant from the magistrate for a search of defendant's store, where the delivery had taken place. Simmons then brought the warrant to the officers, who had previously entered the store and placed defendant under arrest. A search of the premises was conducted and the cocaine was then discovered in the store.

Defendant raises a number of issues on appeal, one of which is dispositive. Specifically, defendant argues that the *Beavers* warrant and the search warrant for his store were not based upon valid affidavits in that the affidavits contained hearsay and did not meet the requirements of MCL 780.653; MSA 28.1259(3). We agree.

Although a search warrant may be issued on the basis of an affidavit which contains hearsay, MCL 780.653; MSA 28.1259(3) imposes certain requirements on what the affidavit must contain in order for a valid warrant to be issued on the basis of that affidavit. *People v Sherbine,* 421 Mich 502; 364 NW2d 658 (1984). Specifically, an affidavit based on hearsay must meet three requirements: (1) the affidavit, when based on informant-supplied

---

[1] *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975).

information, must contain affirmative allegations that the informant spoke with personal knowledge; (2) the affidavit must set forth facts from which one may conclude that the informant is credible; and (3) the information must be shown to be reliable. *Id.* at 509-510.

The affidavit for the *Beavers* warrant averred as follows:

> That on March 17, 1987, affiant received a package from Det. E Pijuan of the Metro Dade Police Department, Miami Florida. Det Pijuan had called affiant on March 16, 1987, and informed affiant that the package had been originally turned over to him by United Parcel Service after they (UPS) had opened it and descovered [sic] what they (UPS) believed to be cocaine. Det Pijuan then tested the substance and indicated to affiant it was cocaine. Det Pijuan then sent the package to affiant via Federal Express. The original package had been addressed to Doug Raymond at 280 East 11th Street, Holland, Michigan 49423. Det Pijuan repacked the original package in another container before sending it to affiant. When affiant received the package he field tested it and it proved positive for cocaine. Affiant then repackaged the cocaine as close as possible to the original container and had it delivered by Wes Haney, a MSP undercover officer dressed as a UPS delivery man to the address of 280 East 11th Street, Holland, Michigan. Once the package was delivered and received by someone identifying themselves as Doug Raymond a search warrant was obtained and executed on the house located at 280 East 11th Street, Holland, Michigan. The package was found in the house and Doug Raymond admitted knowing it was cocaine. He further indicated to affiant that he was just a middle man [sic] and the ultimate delivery was to be to Thomas Tejeda. Doug Raymond further told affiant that as soon as he received the package he was to call Thomas Tejeda and deliver the package with cocaine to Tejeda as he had done

twice before at the Book Store on 14th and College. Doug Raymond called Thomas Tejeda, reached his answering recorder and said he would meet Tejeda at the bookstore on 14th and College. Raymond further stated that if things went as usual he would get his cut of cocaine at that time. Thomas Tejeda has been convicted of sale or delivery of drugs previously. Doug Raymond told the answering recorder he would meet Thomas Tejeda at 2:30 P.M. at the Bookstore. Affiant has weighed the cocaine and the amount is over 140 grams.

The affidavit for the bookstore warrant contained the same information as the *Beavers* warrant with the addition of the following:

Affiant received information that Thomas Tejeda did receive the package and cocaine at the Bookstore located at 335 College Avenue, Holland Michigan. This information was obtained by Lt. Bertee of WEMET by listening to the conversation of Raymond and Tejeda on a transmitter on Raymond via a search warrant earlier obtained. The conversation was relayed to affiant by Lt. Bertee, with Bertee indicating the cocaine was received by Tejeda at 335 College Ave Holland.

We do not believe that these affidavits meet the requirements of *Sherbine.* First, nothing in the affidavits establishes the credibility of Douglas Raymond. Indeed, as in *Sherbine,* the affidavits do not even contain a conclusory statement that Raymond is a credible person, which would not even by itself be sufficient to establish his credibility. See *Sherbine, supra* at 511.

Moreover, the third requirement of *Sherbine,* that the information be shown to be reliable, is also not met here. Nothing in the *Beavers* warrant affidavit establishes that defendant was to be the ultimate recipient of the drugs other than Ray-

mond's own statement. Indeed, the affidavit doesn't even show that Raymond talked with defendant to set up the meeting at which the drugs were delivered. Rather, it only indicates that Raymond left a message on defendant's answering machine indicating that he would meet defendant at defendant's bookstore for some unspecified purpose. The bookstore warrant does contain the additional information that Raymond did deliver the cocaine to defendant, but that information was based upon what was learned by listening to the conversation between Raymond and defendant on the transmitter attached to Raymond pursuant to the *Beavers* warrant. Thus, if the *Beavers* warrant was invalid, the information learned from listening to the conversation cannot be used to support the issuance of the bookstore warrant.

The trial court reasoned that Raymond's knowledge of the contents of the package, WEMET's knowledge of the contents of the package, and defendant's prior conviction for delivery of drugs were sufficient to give reliability and credibility to Raymond's statement. We disagree. That Raymond knew what was in the package does not establish that defendant was involved in the drug transaction. In fact, what it does establish is that Raymond had a reason to tell the police that the package really belonged to someone other than himself. We would find it more persuasive that Raymond had attempted to disavow ownership of the package if he did not know what was in the package. As for WEMET's knowledge that the package contained cocaine, while it establishes that contraband was involved, it does little to establish defendant's involvement in the transaction. As for defendant's prior conviction for delivery of a controlled substance, that twelve-year-old conviction does little to support the belief that the suspect is

currently engaged in illegal narcotics trafficking. See *People v Gleason,* 122 Mich App 482, 492; 333 NW2d 85 (1983) (evidence of a purchase of marijuana two months prior was stale information and worthless as a basis for obtaining a warrant).

In sum, the affidavits in the case at bar did little more than show that the police had a strong case against Raymond and that Raymond was willing to implicate defendant. The affidavits do little to establish the credibility of either the information or Raymond, a man who had every incentive to "cooperate" with the authorities and implicate someone else in the transaction. For these reasons, we conclude that the *Sherbine* requirements were not met in the *Beavers* affidavit and, therefore, the *Beavers* warrant should never have issued. While the bookstore affidavit had a somewhat stronger basis for establishing probable cause to issue a warrant, the additional information in that affidavit was obtained pursuant to the *Beavers* warrant and, therefore, must be disregarded. Accordingly, we must conclude that the bookstore affidavit also failed to meet the *Sherbine* requirements and, therefore, the bookstore warrant should also never have issued. Accordingly, we conclude that the trial court erred in not suppressing the evidence seized pursuant to those warrants.[2]

Before concluding, we should also briefly address the people's argument that the warrants should be upheld because they were also based upon independent police investigation and not just the infor-

[2] We note there is also involved an additional question of the fact that the affidavits at issue were not simply based upon hearsay, but double hearsay. Much of the information in the affidavits, which were signed by Simmons, was information Simmons had received from Bertee, who had received the information from either Raymond or from Raymond's conversation with defendant. However, we need not involve ourselves with determining whether the second level of hearsay renders the warrants invalid since they do not survive an analysis at the first level of hearsay.

mation supplied by Raymond. While plaintiff claims that Raymond's statements were confirmed by independent investigation, nothing in the affidavits suggests that this is true. The only statement confirmed by independent investigation was that of the Florida UPS employee who telephoned the local police to inform them that he had found a package of contraband. The police investigated and confirmed that the package contained cocaine and was addressed to Raymond. No independent police investigation supported any of the facts given by Raymond other than, perhaps, that Raymond was aware that the package contained cocaine. However, as discussed above, Raymond's knowledge of the contents of the package does not help the people's case. Since there was no independent verification of Raymond's statements concerning defendant's involvement, the warrants cannot be upheld on that basis.

For the above reasons, we conclude that the *Beavers* warrant and the search warrant for the bookstore were improperly issued and, therefore, the searches were illegal. Accordingly, the evidence obtained as a result of those invalid warrants must be suppressed. *Sherbine, supra.*

We should briefly address the issues raised in the dissent. With respect to parts I and II of the dissent, while our dissenting colleague may be correct in his analysis, that analysis is irrelevant since we do not base our decision on any constitutional claim raised by defendant. Rather, our decision is premised solely on a failure to meet the requirements of MCL 780.653; MSA 28.1259(3) and *Sherbine, supra.* As for the dissent's inquiry into whether an exclusionary rule exists under the statute, the Supreme Court answered that question in *Sherbine* by suppressing the evidence on the basis of a violation of the statute. The Court

clearly indicated that its conclusion was "mandated by the statute" and that the "statutory violation here is clear" and that "the evidence must therefore be suppressed." *Sherbine, supra* at 505-506, 512.

As for the dissent's conclusion that the amendment to the statute contained in 1988 PA 80 validates the searches at issue (which, it should be noted, the prosecutor does not argue), our dissenting colleague's analysis is flawed. Assuming, without deciding, that the dissent is correct that the purpose of the amendment was to overturn *Sherbine,* at least in part, and that the warrants at issue in this case would be valid under the amended statute, it would not be proper to apply the amendment retroactively. While the dissent correctly points out that a statute which is remedial or procedural in nature may be applied retroactively, that is an exception to the general rule that statutes are to be applied prospectively only unless a contrary intent is expressed by the Legislature. *People v Bates,* 175 Mich App 490, 492; 438 NW2d 298 (1989); see also *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480, 484-485; 124 NW2d 286 (1963). However, for the remedial-procedural exception to apply, the statute must operate in furtherance of a mode of procedure or a remedy or confirmation of already existing rights and may not create new rights nor destroy, enlarge or diminish existing rights. *Hansen-Snyder, supra* at 484-485; *Bates, supra* at 492-493.

In the case at bar, the 1988 amendment to the statute does not come within the remedial-procedural category. It does not merely affect the procedures employed by the courts nor does it further an existing remedy. It does, however, affect existing rights. The statute serves to supplement the constitutional protections against unreasonable

searches and seizures, in particular those con-
ducted pursuant to a warrant issued on informa-
tion supplied by an informant. See *Sherbine, supra*
at 508. Thus, the statutory amendment does affect
existing rights and, therefore, may not be applied
retroactively.

As for defendant's remaining issues, since we
have concluded that the searches were illegal and
the evidence, specifically the cocaine, must be
suppressed, retrial is impossible. Accordingly, we
need not address those additional issues.

Defendant's conviction is reversed and his sen-
tence vacated and defendant shall be discharged
from custody.

HOLBROOK, JR., P.J., concurred.

GRIFFIN, J. *(dissenting)*. Defendant, Thomas Rob-
ert Tejeda, appeals as of right a jury conviction of
possession of more than 50 but less than 225
grams of cocaine, MCL 333.7403(1) and (2)(a)(iii);
MSA 14.15(7403)(1) and (2)(a)(iii). Defendant re-
quests that his conviction be vacated and that he
be released from custody on the grounds that the
evidence obtained against him was the result of an
illegal search and seizure. Although the defendant
seeks to invoke an exclusionary rule as to the
evidence, he does not articulate a constitutional
basis for the suppression.

I

At the outset, I note that the cocaine is not to be
excluded from evidence pursuant to the Michigan
Constitution. In particular, the search and seizure
provision of Const 1963, art 1, § 11 expressly pro-
hibits exclusion in this instance:

The provisions of this section shall not be con-

strued to bar from evidence in any criminal pro-
ceeding any narcotic drug, firearm, bomb, explo-
sive or any other dangerous weapon, seized by a
peace officer outside the curtilage of any dwelling
house in this state.

The history of this provision and its predecessor
was carefully traced by Justice BRICKLEY in *People
v Nash,* 418 Mich 196, 208-215; 341 NW2d 439
(1983). As noted at 418 Mich 210, the citizens of
our state added an antiexclusionary provision to
our constitution in 1936 in response to *People v
Stein,* 265 Mich 610; 251 NW 788 (1933), which
had excluded from evidence an illegally seized
weapon. Language prohibiting the exclusion from
evidence of "any narcotic drug or drugs" was
added in 1952.

Although the delegates to the constitutional
convention of 1961-62 were fully aware of *Mapp v
Ohio,* 367 US 643; 81 S Ct 2d 1684; 6 L Ed 2d 1081
(1961), the drafters of our constitution nevertheless
continued with an antiexclusionary provision in
the hope that the federal precedent would be
overturned or limited to dwellings.

The language of the constitutional provision and
its history "precludes a construction of the Michi-
gan search and seizure clause imposing a higher
standard of reasonableness for searches and sei-
zures of items named in the proviso than the
United States Supreme Court has held applicable
under the Fourth Amendment." *People v Moore,*
391 Mich 426, 435; 216 NW2d 770 (1974). As stated
more recently by the Supreme Court in *People v
Catania,* 427 Mich 447, 466; 398 NW2d 343 (1986):

There is no basis in this case for holding that
the Michigan Constitution, art 1, § 11, permits
greater protection than the United States Consti-
tution.

Accordingly, in the instant case, which involves a narcotic drug seized outside a dwelling house, we should look to the Fourth Amendment of the United States Constitution to determine whether exclusion of the evidence is constitutionally warranted.

II

In *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 (1983), the United States Supreme Court abandoned the rigid two-pronged test of *Aguilar*[1]*-Spinelli*[2] in favor of a less restrictive analysis which examines the "totality of the circumstances" to determine whether an affidavit establishes probable cause. For the reasons stated *infra,* I would hold that the affidavits at issue pass constitutional muster under *Illinois v Gates.*

Second, if we were to consider the Fourth Amendment's exclusionary rule, I would hold that under the good-faith exception announced in *People v Leon,* 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984), suppression of the seized evidence is not warranted.

Suppression of evidence obtained pursuant to a search warrant should be ordered only on a case-by-case basis and only in those cases in which exclusion will further the purposes of the exclusionary rule. 468 US 918. It should not be applied to deter objectively reasonable law enforcement activity. 468 US 918-919.

The Fourth Amendment's exclusionary rule does not bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance upon a search warrant issued by a de-

---

[1] *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964).

[2] *Spinelli v United States,* 393 US 410; 895 S Ct 584; 21 L Ed 2d 637 (1969).

tached and neutral magistrate but ultimately found to be invalid. 468 US 926. The test is whether a reasonably well-trained officer would have known that the search was illegal despite the magistrate's authorization, considering all the circumstances. 468 US 922, n 23.

In the present case, the search warrants at issue were authorized by a neutral, detached magistrate. Suppression of the evidence because of the alleged errors in the affidavits would not further the goals of the exclusionary rule. The alleged technical errors at issue are the type for which *People v Leon* established a good-faith exception.

III

Next, I address the argument that the Legislature intended an exclusionary rule for evidence obtained in violation of statutory requirements. First, I find no expressed provision in any statute which mandates the exclusion of such evidence. On the contrary, I note that the Legislature has codified a harmless-error rule which prohibits reversal unless the improper admission or rejection of evidence results in a *miscarriage of justice:*

> No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice. [MCL 769.26; MSA 28.1096.]

We should not construe statutes as conflicting if a reasonable and harmonizing construction is available.

Justice BOYLE in her dissenting opinion in *People v Sherbine,* 421 Mich 502, 513-516; 364 NW2d 658 (1984), wrote the following in regard to the argument that the former search-warrant statute contains an implied exclusionary rule:

> I cannot conceive of a reason why we should apply the exclusionary rule to the supposed violation of a statute where the affidavit would pass constitutional muster under either Const 1983, art 1, § 11, or US Const, Am IV, see *People v Nash,* 418 Mich 196; 341 NW2d 439 (1983). [421 Mich 516.]

Although the majority in *Sherbine* ruled that suppression was required, the Legislature has effectively overturned *Sherbine* by amending the statutory provision upon which it was based. In response to *Sherbine,* the Legislature enacted 1988 PA 80, which was ordered to take immediate effect. The new statutory provision provides:

> The magistrate's finding of reasonable or probable cause shall be based upon all the facts related within the affidavit made before him or her. The affidavit may be based upon information supplied to the complainant by a named or unnamed person *if the affidavit contains 1 of the following*:
> (a) If the person is named, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information.
> (b) If the person is unnamed, affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable. [MCL 780.653; MSA 28.1259(3); emphasis added.]

The legislative history of the statute reveals that

its purpose was to overrule *Sherbine* for reasons stated in Justice Boyle's dissent. The legislative analysis of the bill prepared for the Michigan Senate articulates the following as "supporting arguments" for the legislation:

The bill would return Michigan to a more traditional approach toward determining whether there is probable cause to issue a search warrant on the basis of an informant's tip. By removing the statutory language relied upon by the Michigan Supreme Court in the *Sherbine* case to require both credibility of the witness and reliability of the information, the bill would reduce the burden imposed on courts and complaining officers when a warrant is sought. At the same time, the bill would not impinge on the constitutional protections of individuals.

While the original *Aguilar-Spinelli* test was considered impractical by the U.S. Supreme Court, the Michigan Supreme Court's expansion of that test as dictated by *People v Sherbine* has made it virtually impossible to meet in some cases, especially in the event of an anonymous tip. And, as the dissent in *Sherbine* concluded, requiring proof of the informant's credibility in each and every case could lead to the remarkable conclusion that, if one of the justices gave the police information that he or she had received a series of threatening phone calls and expected to receive another, a magistrate would not be justified in issuing a warrant unless the affiant officer also provided proof that the justice was credible and that the information was reliable. As the dissent continued, this construction of the statute also would prevent issuance of a search warrant when the affiant was communicating incriminating statements made to him or her by a third person. If the communication were, "I will have the drugs at my home tonight", that would surely be reliable information, but it is doubtful that the speaker could be independently shown to be a credible person. Un-

der the approach proposed in the bill, however, it is likely that a warrant could properly be issued to either scenario. [Senate Legislative Analysis, SB 80, October 30, 1987.]

Although I recognize that such legislative bill analyses are not official statements of legislative policy, they nevertheless are of significant probative value in determining legislative intent. See, e.g., *Sam v Balardo,* 411 Mich 405, 421; 308 NW2d 142 (1981).

In the instant case, it is clear that the Legislature acted to correct what it perceived to be the overly stringent warrant requirements of *Sherbine* and to "return Michigan to a more traditional approach." Since *Sherbine* is based upon statutory, not constitutional grounds, the people through their elected legislators are free to overturn it.

Although the warrants in the instant case were issued prior to its enactment, I view the statute to be remedial and procedural in nature and therefore would apply it retroactively. *People v Bates,* 175 Mich App 490, 492-493; 438 NW2d 298 (1989), and *Hansen-Snyder Co v General Motors Corp,* 371 Mich 480; 124 NW2d 286 (1963).

The warrants in the instant case complied with the less stringent requirements of the new statute. The informant in both of the disputed affidavits was named. Therefore, the affidavits are sufficient if they contain information establishing probable cause and affirmative allegations from which the magistrate could conclude that the person spoke with personal knowledge of the information. MCL 780.653; MSA 28.1259(3) as amended by 1988 PA 80. In the first affidavit, Douglas Raymond stated to the police that he was to deliver the cocaine to defendant. I would find the affidavit sufficient under the newly amended statute. The second affida-

vit in question contains information obtained by a
named informant, Lieutenant Bertee of WEMET, of
a conversation between Raymond and defendant
monitored directly by Lieutenant Bertee on a
transmitter. This second affidavit also establishes
probable cause and meets the requirements of the
new statute.

Finally, the newly enacted statute does not con-
tain an implied exclusionary rule. Implying an
exclusionary rule from nonexisting language
would not only construe the act as conflicting with
the harmless-error statute, it would also be incon-
sistent with the Legislature's intent to "return
Michigan to a more traditional approach." The
purposes and objectives of the statute would not be
served by excluding evidence which is not required
to be suppressed by either the Michigan or United
States Constitutions.

Accordingly, I dissent and would affirm defen-
dant's conviction.[3]

_____

[3] I have also considered the other issues raised on appeal and find
them to be without merit.