## PEOPLE v TEJEDA (ON REHEARING)

Docket No. 104184. Submitted June 14, 1989, at Grand Rapids. Decided April 1, 1991, at 10:15 A.M. Leave to appeal sought.

Thomas R. Tejeda was convicted following a jury trial in the Ottawa Circuit Court, James E. Townsend, J., of possession of more than 50 grams, but less than 225 grams, of cocaine. He was then charged and, following a bench trial, was convicted of being an habitual controlled-substance offender. The defendant was arrested after a police informant, wearing a hidden radio transmitter, delivered a package of cocaine to him at his place of business. The cocaine had previously been analyzed and weighed, and the search warrant authorizing the search of the defendant's premises was issued after the informant delivered the package to the defendant and on the basis of the information obtained through the monitored conversation between the defendant and the informant. The defendant appealed, challenging the validity of affidavits supporting the search warrants authorizing the use of the hidden transmitter and the search of his store. The Court of Appeals reversed the defendant's conviction, concluding that the cocaine was illegally seized because the affidavits in support of the search warrant authorizing the hidden transmitter did not establish the credibility of the informant or that the information contained in the affidavits was reliable. The Court ordered the defendant discharged from custody, noting that retrial was impossible in light of the suppression of the cocaine. 181 Mich App 450 (1989). The prosecutor moved for rehearing. The Court denied rehearing with regard to the suppression issue, but granted rehearing with regard to whether retrial was barred.

On rehearing, the Court of Appeals held:

The observation in the original opinion that retrial was barred was incorrect. The defendant's conviction remains re-

REFERENCES

Am Jur 2d, Evidence §§ 415-418, 433-435; Searches and Seizures §§ 13, 14, 24, 30, 31, 84 et seq.

Admissibility, in criminal case, of evidence obtained by search by private individual. 36 ALR3d 553.

Admissibility, in criminal prosecution, of evidence secured by mechanical or electronic eavesdropping device. 97 ALR2d 1283.

versed; however, remand to the trial court is required for retrial or other appropriate proceedings.

1. Evidence regarding laboratory analysis and weighing of the cocaine, which were done before the unlawful search, as well as testimony regarding events that transpired before the illegally monitored conversation is admissible. The testimony of the informant concerning the contents of the illegally monitored conversation is also admissible.

2. The cocaine seized from the defendant's store may not be placed in evidence. In addition, the illegal observation of the cocaine in the defendant's store may not be a subject of testimony by the police officers who viewed it during and after the execution of the search warrant for the store. The informant may testify that he delivered the cocaine to the defendant and observed the defendant in possession of the package before the execution of the search warrant for the store, as well as about any statements made by the defendant. However, because he was acting as an agent of the government at the time, he may not testify with regard to the presence of the cocaine on the defendant's business premises following the execution of the search warrant.

3. Because the package was addressed to the informant, the defendant had no reasonable expectation of privacy in the package before it was delivered to him. Therefore, the defendant has no standing to raise an issue regarding the search of the package without a warrant before it was delivered to the informant.

4. The defendant was not entrapped.

Reversed and remanded.

GRIFFIN, J., concurring in the granting of a new trial in lieu of dismissing all charges against the defendant, stated that he continues to believe that the defendant's conviction should be affirmed.

1. SEARCHES AND SEIZURES — ILLEGAL SEARCHES — EVIDENCE — INDEPENDENT BASES.

Knowledge gained before and independent of an illegal search may be proved like any other facts; the evidence does not become tainted merely because the same information is subsequently discovered during an illegal search.

2. SEARCHES AND SEIZURES — PARTICIPANT MONITORING — DIRECT EVIDENCE — ADMISSIBILITY.

Testimony of an informant regarding statements spoken to him directly by a defendant in a conversation which was monitored by police officers via a hidden radio transmitter or regarding

the informant's actions and observations during the monitored conversation is admissible even though the warrant authorizing the transmitter is later held to be invalid; nor is such testimony barred where the conversation was the basis of a warrant permitting a subsequent search of the defendant's business which is ultimately held to have been illegal.

3. EVIDENCE — ADMISSIBILITY — PRIVATE INDIVIDUALS — GOVERNMENT AGENTS.

Evidence obtained by private individuals through activities which if done by government agents would constitute a violation of Fourth Amendment rights is generally admissible; however, exclusion is required when the private individual was acting as an agent of governmental officials; the two critical factors in determining whether a private individual was acting as an instrument or agent of the government are whether the government knew of, and acquiesced in, the private individual's intrusive conduct and whether the private party's purpose was to assist law enforcement efforts or to further his own ends (US Const, Am IV).

4. EVIDENCE — ADMISSIBILITY — GOVERNMENT ACTIONS — PRIVATE INDIVIDUALS.

The government may not do through a private individual that which it is otherwise forbidden to do.

5. SEARCHES AND SEIZURES — STANDING — REASONABLE EXPECTATION OF PRIVACY.

A defendant has no standing to raise an issue regarding the legality of a search of a package addressed to another person which occurred before it was delivered to that person and then delivered by that person to the defendant because the defendant had no reasonable expectation of privacy in the package before it was delivered to him.

*Frank J. Kelley*, Attorney General, *Gay Secor Hardy*, Solicitor General, *Wesley J. Nykamp*, Prosecuting Attorney, and *Gregory J. Babbitt*, Assistant Prosecuting Attorney, for the people.

*Balgooyen Law Offices, P.C.* (by *Gerald W. Gibbs*), for the defendant.

ON REHEARING

Before: HOLBROOK, JR., P.J., and SAWYER and GRIFFIN, JJ.

Sawyer, J. This Court previously reversed defendant's conviction of possession of cocaine, MCL 333.7403(2)(a)(iii); MSA 14.15(7403)(2)(a)(iii), concluding that the cocaine was illegally seized pursuant to a defective search warrant. *People v Tejeda,* 181 Mich App 450; 449 NW2d 908 (1989). We also ordered defendant discharged from custody, having noted that retrial was impossible in light of the suppression of the cocaine. *Id.* at 461. The facts leading up to defendant's conviction were fully set out in our prior decision and need not be repeated here.

Following the release of our opinion, the prosecutor moved for rehearing, both on the suppression issue and on our determination that retrial was impossible. In an order dated March 12, 1990, we denied rehearing with regard to the suppression issue, but held in abeyance rehearing regarding the issue whether retrial was barred. We directed the parties to file briefs on that issue, including specifically:

> (1) whether any laboratory analysis, weighing, or other tests performed on the evidence prior to the unlawful search and seizure are admissible and (2) whether Raymond [the informant] or any other witness may be permitted to testify to the delivery of the suppressed evidence or otherwise refer to the suppressed evidence at trial in light of the suppression of that evidence as previously ordered by this Court.

Having received the briefs of the parties, we now conclude that our observation in our original opinion that retrial was barred was incorrect. Accordingly, we grant rehearing with regard to that issue and remand the case to the trial court for retrial, or such other disposition as may be appropriate.

The basis for our earlier conclusion that the

cocaine must be suppressed was that the search warrant issued pursuant to *People v Beavers,* 393 Mich 554; 227 NW2d 511 (1975), was invalid. Under the warrant, the informant, Douglas Raymond, wore an electronic monitoring device while he delivered the cocaine to defendant at defendant's place of business. On the basis of the information gathered from the monitored conversation, the police obtained a second warrant to search the business. During that search, the police recovered the cocaine.

The prosecutor argues that retrial is possible because the package containing the cocaine had been searched before its delivery to defendant (and before the issuance of the defective *Beavers* warrant), and analysis of the contents revealed the presence of cocaine. The prosecutor also argues that the defective *Beavers* warrant will not prevent Raymond from testifying about the conversation himself or about the fact that he delivered the package containing cocaine to defendant. We agree.

The first question is whether the laboratory analysis and weighing of the cocaine, which were done before the unlawful search, are admissible. We conclude that they are. In *Smith v United States,* 402 F2d 771, 772 (CA 9, 1968), the court ruled that a police officer may testify about his observation of certain articles that were suppressed because they were illegally seized where those observations were made before the illegal seizure. A similar result was had in *Aiuppa v United States,* 393 F2d 597 (CA 10, 1968), vacated on other grounds 394 US 310; 89 S Ct 1164; 22 L Ed 2d 297 (1969), conviction reinstated 440 F2d 893 (CA 10, 1971), cert den 404 US 871 (1971). There, the court said that knowledge gained before and independent of an illegal search may be

proved like any other facts. *Id.* at 600. The court went on to say that such evidence does not become tainted merely because the same information is subsequently discovered during an illegal search. *Id.*

A clear example of the principle articulated in *Aiuppa* is found in *State v Beasley,* 183 Neb 681; 163 NW2d 783 (1969). In that case, the defendant was convicted of robbing a loan company office. At the time of the robbery, he was carrying a suitcase. He placed the suitcase in a bus station locker between the time of the robbery and his subsequent arrest. *Id.* at 684. The suitcase was subsequently suppressed, apparently because of an illegal search of the locker. The defendant asserted that witnesses who had seen the suitcase during and immediately after the robbery should not have been allowed to mention the suitcase in their trial testimony because it had been suppressed. The Nebraska Supreme Court, citing *Aiuppa,* ruled that the testimony was proper because it concerned observations made entirely separate from the later search and seizure by the police. *Beasley, supra* at 684.

Thus, in the present case, testimony regarding the lab analysis and the weighing of the cocaine is admissible because it occurred before the illegal search. The same is true of testimony regarding events that transpired before the illegally monitored conversation.

The testimony of Raymond concerning the contents of the illegally monitored conversation is also admissible. In our previous opinion, we ruled that the warrant secured for the purpose of allowing Raymond to monitor his conversation with defendant via a concealed radio transmitter was invalid because the affidavit used to secure the warrant did not meet the requirements of *People v*

*Sherbine,* 421 Mich 502; 364 NW2d 658 (1984). That is, the affidavit did not establish that Raymond was a credible informant or that the information supplied by Raymond, namely, that defendant was to be the ultimate recipient of the cocaine, was reliable. Under *Beavers,* the transmitted account of the conversation between Raymond and defendant must be suppressed. *Id.* at 567. That means that a third-party monitor of the conversation may not testify regarding its contents. *Id.* However, that prohibition does not extend to one directly participating in the conversation. *Id.* Thus, in the present case, *Beavers* does not prevent Raymond from testifying about the contents of the conversation.

Nor is the conversation barred under *Smith* and *Aiuppa,* because it occurred before the illegal search that revealed the cocaine on defendant's business premises.

However, that conclusion does not resolve the issue whether Raymond may testify that he delivered the cocaine to defendant. In *McGinnis v United States,* 227 F2d 598 (CA 1, 1955), the court said the following about the consequences of an illegal search:

> [A]ny seizure made during an illegal search would itself be illegal, and therefore, if timely and appropriate objection were made, such items could not properly remain in evidence. But this is not the full measure of the constitutional protection. We find no basis in the cases or in logic for distinguishing between the introduction into evidence of physical objects illegally taken and the introduction of testimony concerning objects illegally observed. We are aware of no case which makes this distinction. Moreover, it seems to us that the protection afforded by the Constitution against unreasonable search and seizure would be

narrowed down to a virtual nullity by any such view of the law, which in effect would grant to the victims of unreasonable search and seizure the rather unsubstantial right to be convicted on the basis of evidence which was illegally observed rather than evidence which was illegally taken. [*Id.* at 603.]

As authority for that position, the court cited *Silverthorne Lumber Co, Inc v United States,* 251 US 385; 40 S Ct 182; 64 L Ed 319 (1920). In that case, the government acknowledged that it had illegally seized some documents that it sought to use against the defendant, but argued that, while it could not use the documents themselves, it should be able to use knowledge gleaned from an inspection of the documents. *Id.* at 391. The Supreme Court disagreed:

The proposition could not be presented more nakedly. It is that although of course its seizure was an outrage which the Government now regrets, it may study the papers before it returns them, copy them, and then may use the knowledge that it has gained to call upon the owners in a more regular form to produce them; that the protection of the Constitution covers the physical possession but not any advantages that the Government can gain over the object of its pursuit by doing the forbidden act. *Weeks v United States* [232 US 383; 34 S Ct 341; 58 L Ed 652 (1914)], to be sure, had established that laying the papers directly before the grand jury was unwarranted, but it is taken to mean only that two steps are required instead of one. In our opinion such is not the law. It reduces the Fourth Amendment to a form of words. 232 US 393. The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court but that it shall not be used at all. [*Silverthorne, supra* at 391-392.]

*McGinnis* itself was cited in *Wong Sun v United States,* 371 US 471, 485; 83 S Ct 407; 9 L Ed 2d 441 (1963), where the Supreme Court said:

> The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from our holding in *Silverman v United States* [365 US 505; 81 S Ct 679; 5 L Ed 2d 734 (1961)], that the Fourth Amendment may protect against the overhearing of verbal statements as well as against the more traditional seizure of "papers and effects." Similarly, testimony as to matters observed during an unlawful invasion has been excluded in order to enforce the basic constitutional policies. *McGinnis v United States* [227 F2d 598 (CA 1, 1955)]. Thus, verbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the "fruit" of official illegality than the more common tangible fruits of the unwarranted intrusion.

Thus, in the present case, not only may the cocaine seized from defendant's place of business not be placed in evidence, the illegal observation of the cocaine in defendant's place of business may not be a subject of testimony by the police officers who viewed it during and after the execution of the search warrant for the place of business.

The prosecutor argues that, nonetheless, Raymond should still be able to testify that he delivered the cocaine to defendant. We agree. Generally speaking, evidence obtained by private individuals, through activities that if done by government agents would constitute a violation of Fourth Amendment rights, is nonetheless admissible:

> This rule, however, is subject to the exception that exclusion is required when the private indi-

vidual is acting as an agent of governmental offi-
cials. [McCormick, Evidence (2d ed), § 168, pp 372-
373.]

In *United States v Feffer,* 831 F2d 734, 737, 739
(CA 7, 1987), the court said that the government
may not do through a private individual that
which it is otherwise forbidden to do. In determin-
ing whether a private individual was acting as an
instrument or agent of the government, the two
critical factors are whether the government knew
of, and acquiesced in, the private individual's in-
trusive conduct and whether the private party's
purpose was to assist law enforcement efforts or to
further his own ends. The analysis is to be made
case by case and in light of all the circumstances.

In the factual context of the present case, Ray-
mond was acting as an agent of the government
when he delivered the cocaine to defendant. Once
Raymond was arrested, he agreed to cooperate
with the police in a controlled delivery of the
cocaine. Thus, the police knew Raymond would be
delivering the cocaine to defendant's place of busi-
ness and the delivery was an assistance to law
enforcement efforts. Because Raymond was acting
as an agent of the government, he, like the police
officers who observed the cocaine at defendant's
business, may not testify regarding the presence of
the cocaine on defendant's business premises fol-
lowing execution of the search warrant.

However, one point remains. As discussed above,
the defective *Beavers* warrant taints the *transmit-
ted* account of the conversation, but does not pre-
vent the informant himself from testifying about
the contents of the conversation. *Beavers, supra* at
567. Thus, the exclusionary rule only applies to
the *recorded* or transmitted conversation. Accord-
ingly, since Raymond is permitted to testify about

the conversation, he should also be able to testify about his actions and observations during the monitored conversation (and before the execution of the search warrant). In other words, the defective *Beavers* warrant only taints the transmitted conversation itself and the subsequent search of defendant's place of business under the warrant obtained on the basis of that transmitted conversation. See *Tejeda, supra* at 457.

Thus, the only taint to the cocaine itself is that which arose during the search of defendant's business under the defective search warrant. Accordingly, we conclude that Raymond may testify that he delivered the package of cocaine to defendant and observed defendant possessing the package before the execution of the search warrant, as well as about any statements made by defendant.

In sum, we conclude that the prosecutor may introduce evidence of the laboratory analysis performed on a sample of the cocaine procured before the unlawful search of defendant's business. Furthermore, the prosecutor may introduce Raymond's testimony concerning the events which occurred, and statements made, during the monitored conversation before the execution of the search warrant for the physical search of defendant's business. The prosecutor may not, however, introduce any recording or transcript of the monitored conversation, the cocaine itself, or any other evidence obtained during, or as a result of, the search of the bookstore. We, however, express no opinion about whether this evidence will be sufficient to convince a jury of defendant's guilt. Defendant is, of course, free to move in the trial court to quash the information if he believes that the prosecutor no longer has sufficient evidence to warrant bringing defendant to trial.

Finally, in our original opinion we declined to

address additional issues raised by defendant. See *Tejeda, supra* at 461. We do so now, briefly. First, defendant argues that the search of the package without a warrant by the Miami and Holland police before the delivery to Raymond was unlawful. Defendant, however, has no standing to raise this issue because he had no reasonable expectation of privacy in the package before Raymond's delivery of the package to him, inasmuch as the package was addressed to Raymond. See *People v Smith,* 420 Mich 1, 25-26; 360 NW2d 841 (1984).

Defendant also argues that he was entrapped because of the exploitation of his friendship with Raymond. We disagree. We apply the so-called "objective test" and determine whether the police engaged in reprehensible behavior to obtain a conviction. *People v Jamieson,* 436 Mich 61, 80; 461 NW2d 884 (1990). We are not persuaded that the police engaged in reprehensible conduct. Indeed, defendant's argument is that the police used his friendship with Raymond to trick him into taking possession of the package, which he did not know contained contraband. Accepting defendant's version of the facts as true for purposes of argument, it would not establish entrapment. Rather, it would establish defendant's innocence, because an element of the offense would be missing, namely, defendant's knowingly possessing a controlled substance. See CJI 12:3:00. Rather, to establish entrapment, defendant would have to show that he knowingly possessed the cocaine, but did so only as a result of reprehensible police conduct in exploiting his friendship with Raymond. This he has not done.

Finally, defendant argues that the cocaine must be suppressed because the search warrant for the bookstore was not issued by a neutral and detached magistrate. However, we need not address

this issue because we have suppressed the evidence on other grounds.

Defendant's conviction remains reversed; however, the matter is remanded to the trial court for retrial or for such other proceedings as are consistent with this opinion. We do not retain jurisdiction.

HOLBROOK, JR., P.J. concurred.

GRIFFIN, J. *(concurring).* I continue to believe that defendant's conviction should be affirmed for the reasons stated in *People v Tejeda,* 181 Mich App 450, 461; 449 NW2d 908 (1989) (GRIFFIN, J., dissenting). However, at this juncture on limited rehearing, I concur in the granting of a new trial in lieu of dismissing all charges against the defendant.