PEOPLE v WILHELM (ON REHEARING)

Docket No. 115560. Submitted December 14, 1990, at Lansing. Decided August 6, 1991, at 9:20 A.M.

Donald Wilhelm was convicted by a jury in the Genesee Circuit Court, Thomas M. Donnellan, J., of third-degree criminal sexual conduct after being charged with first-degree criminal sexual conduct and kidnapping. The defendant appealed, claiming that his conviction should be reversed because the trial court refused to instruct the jury concerning second-degree criminal sexual conduct, refused to admit certain testimony because of the defendant's failure to comply with the notice provision of the rape-shield statute, refused to suppress as evidence certain items seized during a search of the defendant's boat, and failed to direct a verdict of acquittal with respect to the kidnapping charge. The Court of Appeals, SHEPHERD, P.J., and GILLIS and CAVANAGH, JJ., reversed in an unpublished opinion, decided May 20, 1991. The Court of Appeals granted a rehearing on its own motion.

On rehearing, the Court of Appeals held:

Second-degree criminal sexual conduct is a cognate included lesser offense of first-degree criminal sexual conduct; accordingly, a jury instruction concerning second-degree criminal sexual conduct needs to be given only where the evidence at trial supports the lesser offense. Because the defendant admitted that penetration had taken place, there was no factual basis for the requested instruction concerning second-degree criminal sexual conduct. The evidence concerning the complainant's public conduct with persons other than the defendant involved sexual conduct and was subject to the provisions of the rape-shield statute. The trial court properly held that the evidence concerning that conduct was precluded because the defendant failed to give the required statutory notice to the prosecutor. The defendant was not prejudiced either by the

REFERENCES

Am Jur 2d, Rape §§ 82, 83, 86, 110.

See the Index to Annotations under Chastity; Rape; Rape Shield Statute.

admission of the evidence seized on the defendant's boat or by the failure of the trial court to direct a verdict of acquittal with respect to the kidnapping charge.

1. While there is a split on the Court of Appeals concerning whether second-degree criminal sexual conduct is a necessarily included lesser offense of first-degree criminal sexual conduct, the preferable view is that it is a cognate included lesser offense. Because there is no question that penetration occurred, the trial court properly refused to instruct the jury concerning second-degree criminal sexual conduct.

2. The defendant's proffered testimony concerning his observation of the complainant exposing her breasts to men in a bar and allowing one of those men to fondle her was evidence of sexual conduct within the meaning of the rape-shield statute, MCL 750.520j; MSA 28.788(10). The fact that the alleged activities of the complainant occurred in public does not remove the matter from the scope of the rape-shield statute, nor does the fact that the defendant observed those activities make those activities past sexual conduct between the complainant and the defendant within the meaning of the rape-shield statute. Because the proffered evidence was not relevant to the issue whether the complainant consented to intercourse with the defendant, the refusal by the trial court to admit that evidence did not deny the defendant his right of confrontation.

3. The trial court properly refused to suppress as evidence items belonging to the complainant that were found during the search of the defendant's boat, the admission of that evidence being harmless in view of the fact that the defendant admitted that the complainant had been present on his boat.

4. The defendant was not prejudiced by the trial court's failure to grant his motion for a directed verdict of acquittal with respect to the kidnapping charge.

Affirmed.

SHEPHERD, P.J., concurring, emphasized that the failure of the defendant to initiate an investigation of his allegations concerning the complainant's behavior by giving the prosecutor the required statutory notice precludes any meaningful consideration of the defendant's assertion that the probative value of that testimony outweighed any risks of unfair prejudice.

1. RAPE — FIRST-DEGREE CRIMINAL SEXUAL CONDUCT — SECOND-DE-
     GREE CRIMINAL SEXUAL CONDUCT — INCLUDED OFFENSES.
   Second-degree criminal sexual conduct is a cognate included
     lesser offense of first-degree criminal sexual conduct (MCL
     750.520b, 750.520c; MSA 28.788[2], 28.788[3]).

2. RAPE — CRIMINAL SEXUAL CONDUCT — EVIDENCE OF PRIOR SEXUAL
   CONDUCT — RAPE-SHIELD STATUTE.

   Evidence that the victim of an alleged rape made a public display
   of her breasts and permitted herself to be fondled by a person
   other than the defendant shortly before the alleged rape was
   evidence that fell within the scope of the rape-shield statute;
   neither the public nature of the activities nor the fact that the
   activities were observed by the defendant removed the evidence
   from the scope of the rape-shield statute (MCL 750.520j; MSA
   28.788[10]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Edwin R. Brown,* Assistant Prosecuting Attorney, for the people.

*Joseph J. Farah,* for the defendant.

ON REHEARING

Before: SHEPHERD, P.J., and GILLIS and CAVANAGH, JJ.

PER CURIAM. Defendant was charged with first-degree criminal sexual conduct, MCL 750.520b(1)(f); MSA 28.788(2)(1)(f), and kidnapping, MCL 750.349; MSA 28.581. Following a jury trial, defendant was convicted of third-degree criminal sexual conduct, MCL 750.520d(1)(b); MSA 28.788(4)(1)(b). Defendant was sentenced to from three years and nine months to ten years' imprisonment. Defendant appealed as of right. While this Court originally reversed defendant's conviction, we granted rehearing on our own motion and now affirm.

Defendant first claims that the trial court erred when it denied his request to instruct the jury concerning second-degree criminal sexual conduct. The trial court denied the instruction, ruling that

defendant did not dispute penetration and, therefore, there was no evidence to support the instruction. There is a split on this Court concerning whether second-degree criminal sexual conduct is a necessarily included lesser offense of first-degree criminal sexual conduct. Compare *People v Norman,* 184 Mich App 255, 259-260; 457 NW2d 136 (1990), and *People v Garrow,* 99 Mich App 834; 298 NW2d 627 (1980), with *People v Green,* 86 Mich App 142, 150-152; 272 NW2d 216 (1978), *People v Secreto,* 81 Mich App 1; 264 NW2d 99 (1978), and *People v Thompson,* 76 Mich App 705, 707-708; 257 NW2d 268 (1977). We agree with *Norman* and *Garrow,* which hold that second-degree criminal sexual conduct is not a necessarily included lesser offense of first-degree criminal sexual conduct, but is instead a cognate lesser included offense. Because second-degree criminal sexual conduct is a cognate offense of first-degree criminal sexual conduct, defendant cannot seek reversal on the basis of the trial court's refusal to instruct the jury on an offense inconsistent with the evidence and his theory of the case. *People v Heflin,* 434 Mich 482, 499; 456 NW2d 10 (1990). Here, the victim testified that penetration, as opposed to sexual contact, occurred; defendant testified that consensual sexual contact and penetration occurred. Under these circumstances, the trial court properly declined defendant's request to instruct the jury with regard to second-degree criminal sexual conduct. *Id.* But see and compare *People v Triplett,* 163 Mich App 339, 344-346; 413 NW2d 791 (1987), remanded on other grounds 432 Mich 568; 442 NW2d 622 (1989).

Defendant next claims that the trial court abused its discretion when it prohibited him from introducing certain testimony concerning alleged prior acts of the victim. Both the victim and

defendant were in a bar. They were not together.
Defendant claimed that he observed the victim lift
her shirt and expose her breasts to two men who
were sitting at her table. The victim also allegedly
allowed one of the two men to "fondle" her
breasts. Defendant claimed that another witness
had also seen this activity.

During trial, the prosecutor learned that defendant intended to introduce this evidence. The prosecutor argued that the rape-shield statute, MCL
750.520j; MSA 28.788(10),[1] prohibited evidence of
the victim's sexual conduct with another. Defendant moved to have this evidence admitted as
relevant to the issue whether the victim had consented to intercourse with him later that same
evening in his boat that was parked in his parents'
driveway. The prosecutor noted that defendant
had failed to comply with the statute's notice
requirement. MCL 750.520j(2); MSA 28.788(10)(2).

Defendant argued that the lifting of the shirt

---

[1] MCL 750.520j; MSA 28.788(10) provides:

(1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and
reputation evidence of the victim's sexual conduct shall not be
admitted under section 520b to 520g unless and only to the
extent that the judge finds that the following proposed evidence
is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative
value:

(a) Evidence of the victim's past sexual conduct with the
actor.

(b) Evidence of specific instances of sexual activity showing
the source or origin of semen, pregnancy, or disease.

(2) If the defendant proposes to offer evidence described in
subsection (1)(a) or (b), the defendant within 10 days after the
arraignment on the information shall file a written motion and
offer of proof. The court may order an in camera hearing to
determine whether the proposed evidence is admissible under
subsection (1). If new information is discovered during the
course of the trial that may make the evidence described in
subsection (1)(a) or (b) admissible, the judge may order an in
camera hearing to determine whether the proposed evidence is
admissible under subsection (1).

was not sexual conduct. Defendant also argued that another state's similar rape-shield statute had been held not to prohibit such evidence, citing *State v Colbath,* 130 NH 316; 540 A2d 1212 (1988). Defendant claimed that such evidence was relevant to the issue of consent.

The court noted that the statute's motion requirement had not been complied with and, therefore, the prosecutor's ability to procure witnesses to rebut the existence of the victim's alleged acts had been impaired. Defendant claimed that the prosecutor still had the victim available to deny the accusations and cited *People v Lucas,* 160 Mich App 692; 408 NW2d 431 (1987). In *Lucas,* this Court held that the notice requirement was unconstitutional when applied to preclude evidence of specific instances of sexual conduct between the victim and the defendant. In essence, this Court believed that the purpose of the notice requirement was not served in such cases, because the victim and the defendant were likely the only witnesses to the prior conduct. We note that after the instant trial, our Supreme Court, in lieu of granting leave to appeal, remanded *Lucas* to our Court for a determination of whether exclusion of the proposed evidence was harmless error. *People v Lucas,* 433 Mich 878 (1989). Subsequently, this Court held that the error was not harmless, and our Supreme Court denied leave. *People v Lucas (On Remand),* unpublished opinion per curiam of the Court of Appeals, decided March 7, 1990 (Docket No. 122171), lv den 434 Mich 925 (1990). The prosecutor in *Lucas* appealed, and the United States Supreme Court reversed, holding that a determination of whether the notice requirement violated a defendant's right of confrontation must be made case by case. *Michigan v Lucas,* 500 US —; 111 S Ct 1743; 114 L Ed 2d 205 (1991). In doing

so, the Supreme Court noted that the statute protected the prosecution from surprise and allowed it to interview persons who knew the parties and to investigate otherwise whether such a prior relationship actually existed. *Id.*

The prosecutor in the instant case indicated that this Court's original decision in *Lucas* was distinguishable because it involved a relationship between the victim and the defendant and, therefore, investigation of other witnesses would be of little benefit. The prosecutor argued that the instant allegations required investigation beyond the questioning of the victim.

Defendant claimed that the victim could deny the accusation. Defendant again argued that the lifting of the shirt was not sexual conduct.

The court stated that the lifting of the shirt was indecent exposure and conduct covered by the statute. The court ruled that the original *Lucas* case was distinguishable and that, in the instant case, the prosecutor would be prejudiced by waiver of the notice requirement of the statute because he could not investigate other witnesses to the alleged incidents.

By enacting the rape-shield law, the Legislature recognized that in the vast majority of cases, evidence of a rape victim's prior sexual conduct with others and sexual reputation, when offered to prove that the conduct at issue was consensual or for general impeachment, is irrelevant and, therefore, inadmissible. *People v Hackett,* 421 Mich 338, 347-348; 365 NW2d 120 (1984). The allowance of such evidence in the past caused victims to refuse to report the crime or to testify for fear that the proceedings would veer from an impartial examination of the accused's conduct on the date in question and instead take on aspects of an inquisition during which the victim would be required to

acknowledge and justify her past. *People v Arenda,* 416 Mich 1; 330 NW2d 814 (1982). Hence, the law encourages a victim to report the assault by protecting the victim's sexual privacy. *Id.* Moreover, the law bars evidence that may prejudice and mislead the jury and is only of arguable probative worth. *Id.* There are certain limited situations in which such evidence may be relevant and its admission may be required to preserve a defendant's constitutional right of confrontation. *Hackett, supra* at 348.

While the rape-shield statute discusses the requirements to be followed where the proffered evidence falls within MCL 750.520j(1)(a) and (b); MSA 28.788(10)(1)(a) and (b), our Supreme Court has held that such a hearing procedure applies where the defendant claims that he would be denied his right of confrontation by the exclusion of the victim's prior sexual conduct with third persons. *Hackett, supra* at 350. Moreover, our Supreme Court held that the trial court retains the discretion to exclude relevant evidence where its probative value is substantially outweighed by the risks of unfair prejudice or where it would lead to confusion of the issues or misleading the jury. *Id.* at 351.

On appeal, defendant argues that the public nature of the victim's acts removes them from the scope of the rape-shield statute because the underlying policy of protecting the victim from unwarranted invasions of her privacy is inapplicable. Defendant relies on *Colbath, supra.*

In *Colbath,* the defendant and the victim were in a tavern. The victim directed unspecified "sexually provocative attention" toward several men in the tavern, including the defendant. The defendant testified that he had felt the victim's breasts and bottom and that she had rubbed his crotch

before they left the tavern and went to the defen-
dant's trailer. There they had intercourse, which
the defendant claimed was consensual and the
victim claimed was not. While in the trailer, the
defendant's live-in female companion came home,
suspecting the defendant's infidelity. Upon discov-
ering the pair, she violently assaulted the victim
and dragged her outside by the hair. The trial
court ruled that the evidence was inadmissible
under New Hampshire's rape-shield law. Nonethe-
less, a state's witness testified that the victim had
left the tavern in the company of various men
several times during the afternoon and that the
victim was "hanging all over everyone and making
out with Richard Colbath and a few others." The
trial court instructed the jury that the evidence
was irrelevant. The New Hampshire Supreme
Court declined the defendant's request to rule that
its rape-shield law did not apply because the vic-
tim's right to privacy was not invaded by a discus-
sion of acts that occurred in a bar open to the
public. Instead, the court ruled that the defen-
dant's right of confrontation required that the
defendant be allowed to demonstrate that the
probative value of statutorily inadmissible evi-
dence in the context of his particular case out-
weighed its prejudicial effect on the victim. In
doing so, the court noted:

   As soon as we address this process of assigning
relative weight to prejudicial and probative force,
it becomes apparent that the public character of
the complainant's behavior is significant. On the
one hand, describing a complainant's open, sexu-
ally suggestive conduct in the presence of patrons
of a public bar obviously has far less potential for
damaging the sensibilities than revealing what the
same person may have done in the company of
another behind a closed door. On the other hand,

evidence of public displays of general interest in sexual activity can be taken to indicate a contemporaneous receptiveness to sexual advances that cannot be inferred from evidence of private behavior with chosen sex partners.

In this case, for example, the jury could have taken evidence of the complainant's openly sexually provocative behavior toward a group of men as evidence of her probable attitude toward an individual within that group. Evidence that the publicly inviting acts occurred closely in time to the alleged sexual assault by one such man could have been viewed as indicating the complainant's likely attitude at the time of the sexual activity in question. It would, in fact, understate the importance of such evidence in this case to speak of it merely as relevant. We should recall that the fact of intercourse was not denied, and that the evidence of assault was subject to the explanation that the defendant's jealous living [sic? live-in] companion had inflicted the visible injuries. The companion's furious behavior had further bearing on the case, as well, for the jury could have regarded her attack as a reason for the complainant to regret a voluntary liaison with the defendant, and as a motive for the complainant to allege rape as a way to explain her injuries and excuse her undignified predicament. [130 NH 324. Citations omitted.]

In *State v Bevins,* 140 Vt 415; 439 A2d 271 (1981), another appellate court had the opportunity to consider whether a trial court's exclusion of evidence of the victim's sexual conduct with a third person denied the defendant his right of confrontation. The defendant claimed that he had gone to the bar with his brother-in-law and a friend. The victim had engaged in "sexually provocative conduct" with the defendant's brother-in-law, trying to induce him to engage in sexual intercourse with her. The defendant further

claimed that his brother-in-law publicly spurned these advances. The rape occurred outside the bar two hours later. The defendant wanted to introduce evidence of the victim's behavior and the public spurning to show that she had a motive for fabricating the charge. The Vermont Supreme Court held that the evidence was irrelevant and, therefore, inadmissible. The court opined that it would defy belief that the victim would retaliate by accusing a third person. The court also held that the evidence was inadmissible to show consent, stating that the victim's willingness to have sexual relations with one person does not prove a concomitant desire to consent to such relations with another. Finally, even if the evidence were somehow relevant, the court held that its prejudicial effect outweighed its probative value. In doing so, the court noted:

> "It raises very real possibilities that some jurors will find the conduct of a rape victim so alien to their own experience and morals, and so offensive, that they will be unable to comprehend how such a person could be raped. Similarly, the introduction of such evidence runs the risk of turning the trial from an impartial examination of the incident in question to an inflammatory and titillating inquiry into irrelevant pages of the victim's life, confusing the issues and misleading the jury." [*Id.* at 420, quoting *State v Patnaude,* 140 Vt 361, 376; 438 A2d 402 (1981).]

As noted above, defendant claims that the public nature of the victim's activities should remove them from the protection of the rape-shield statute. We disagree. The statute itself does not make this distinction. Defendant treats the statute's purpose of protecting the victim's privacy as though it extends only to private acts. As noted in *Arenda,*

one of the purposes of the law is to encourage victims to report and testify without fear that the trial court's proceedings would veer from an impartial examination of the accused's conduct on the date in question and instead take on the aspects of an inquisition during which the victim would be required to acknowledge and justify her sexual past. Moreover, we fail to see how a woman's consensual sexual conduct with another in public indicates to third parties that the woman would engage in similar behavior with them. As noted in *Hackett,* evidence of a rape victim's unchastity is ordinarily insufficiently probative of her consent to intercourse with a defendant.

Defendant next contends that the court erred in applying the rape-shield statute to the victim's alleged showing of her breasts, claiming that this is not sexual conduct. If the conduct was not sexual conduct and, therefore, did not indicate the victim's willingness to engage in sexual intercourse with defendant, we are unable to see how it was relevant. In any event, we hold that the alleged showing of the breasts was sexual conduct when followed by the touching of the breast.

If the showing of the breasts was sexual conduct, defendant argues that it was sexual conduct that involved him because he observed it. Hence, defendant argues that the trial court's failure to hold an evidentiary hearing to determine whether the evidence was more prejudicial than probative was error. We decline defendant's invitation to characterize sexual conduct observed by him as evidence of the victim's past sexual conduct with him when the conduct was clearly directed at the men with whom the victim was sitting. Moreover, while an evidentiary hearing would have been beneficial to the extent that the victim could have denied or admitted the alleged conduct, we hold that the

failure to hold the hearing was harmless given our discussion of defendant's remaining issues 'as they relate to the rape-shield law.

Defendant next concedes that the fondling of the breast does not constitute evidence of the victim's past sexual conduct with the actor; however, he again argues that the public nature of the act removes it from the protection of the rape-shield law. We have rejected this argument in the context of the showing of the breasts and do likewise in this context. In sum, the evidence was properly excluded pursuant to the rape-shield statute.

Finally, defendant claims that the application of the notice requirement and the preclusion of the evidence under the rape-shield law deprived him of his right of confrontation. We disagree. Evidence of a victim's sexual conduct with a third party is irrelevant to the issue whether she consented to sexual intercourse with the defendant. *Hackett, supra; Thompson, supra.* Defendant further argues that the victim's acts with the third persons were probative of the issue of consent because they occurred in a public place and shortly before the period of time during which he claims that the victim consented to sexual relations with him. Defendant apparently attempts to analogize his case with *Colbath.* We believe that *Colbath* is distinguishable. As noted therein, the victim's behavior constituted a public display of general interest in sexual activity in which the defendant was directly involved. Moreover, the victim in *Colbath* had left the bar with various men several times during the afternoon, and the beating she had received from the defendant's live-in companion in that case may have provided a motive for fabrication. We note that our Supreme Court has indicated that evidence of a victim's sexual history might be relevant where the victim

has engaged in a prior pattern of behavior clearly similar to the conduct immediately in issue. *Hackett, supra* at 355, n 4. We hold that the evidence proffered in this case was closer to that offered in *Bevins.* If believed, the victim's alleged conduct occurred with third parties and, although observed by defendant, was not relevant to the issue whether she consented to sexual intercourse with him later on the same evening. Because the evidence was irrelevant, defendant was not denied his right of confrontation. *Arenda, supra* at 8.

Defendant next claims that the circuit court erred when it denied his motion to suppress certain evidence seized on his boat. Defendant argues that he was illegally arrested and that the evidence obtained pursuant to the subsequently issued search warrant was the fruit of the poisonous tree. The circuit court denied defendant's motion to suppress, ruling that exigent circumstances existed. Even if we accepted defendant's argument that he was illegally arrested and the initial entry was not justified by exigent circumstances, the admission of the pen and the mirror seized was harmless. *People v Jordan,* 187 Mich App 582, 593-594; 468 NW2d 294 (1991). The victim claimed that she left these objects so that she could identify the place she had been. Defendant did not dispute that the victim was in the boat with him. Hence, the admission of the evidence, which only proved the victim's presence on the boat, was harmless.

Finally, defendant claims that he was prejudiced by the trial court's failure to grant his motion for a directed verdict with respect to the kidnapping charge. Assuming that the trial court improperly denied defendant's motion for a directed verdict, we hold that defendant was not prejudiced. *People v Swartz,* 171 Mich App 364, 378-379; 429 NW2d 905 (1988).

Affirmed.

SHEPHERD, P.J. *(concurring).* I concur in the result because defendant did not comply with the ten-day notice provision of the rape-shield statute that was held by the United States Supreme Court not to be per se unconstitutional on the same day, May 20, 1991, as our original opinion in this case. *Michigan v Lucas,* 500 US —; 111 S Ct 1743; 114 L Ed 2d 205 (1991). Had defendant complied, the prosecutor would have been able to attempt to verify his version of the facts—an opportunity which effectively disappeared with the passage of time on the date of trial. Then, once such verification occurred, the trial judge could have held an in camera hearing to determine whether, under the facts of this case, the evidence was more probative than prejudicial or inflammatory.

Under the rape-shield statute, the evidence in question is clearly inadmissible if the statute is to be read in its literal terms in all cases. However, in cases such as *People v Hackett,* 421 Mich 338; 365 NW2d 120 (1984), cited in the majority opinion, the statute has effectively been rewritten by the Michigan Supreme Court in order to preserve a defendant's right of confrontation. As the majority acknowledges, the cases, including *Hackett,* make it very clear that in some cases evidence of the sexual conduct of the complainant with third parties, beyond evidence showing the source or origin of semen, pregnancy or disease, is admissible. Such a concept is in no way reconcilable with the express language of the rape-shield statute unless it is acknowledged that the statute is nothing more than a rule of evidence that, like all other rules of evidence, must be interpreted in such a way as to preserve a defendant's right to present a defense, to preserve his presumption of

innocence, and to protect his right of confrontation.

While it is true that a woman in a rape case does not have to defend her reputation or her past conduct, it is equally true that a defendant stands before the court clothed with a presumption of innocence and without the obligation of proving anything at all. As a rule of evidence, the rape-shield statute was designed to strike a balance between these sometime conflicting considerations. Cases such as *Hackett* hold that the statute did not achieve that balance and that the statute must always be interpreted and applied in a manner that preserves the rights of both defendants and accusers.

The first inquiry in any of these situations is whether evidence exists in support of a defendant's claims. Then, the question would be whether the evidence, if true, fits within the *Hackett* exceptions to the strict language of the statute. If the facts are covered by the exceptions, a question would still remain whether the specific evidence is more prejudicial or inflammatory than probative.

None of these matters can be explored unless the ten-day rule is invoked by the defendant— particularly where the defendant was at all times aware of the alleged facts that he claims are essential to his defense and where the testimony of others who could corroborate the defendant's allegations might have been discovered had the prosecutor been aware of the need of conducting an investigation. In this case the prosecution was deprived of any opportunity to conduct a meaningful investigation, and the trial judge was correct in pointing out the basic unfairness of the way defendant sought to proceed. For that reason, I agree to affirm.

It might very well be that the evidence would prove to be inadmissible after a hearing. However, when a defendant deprives this Court of ever knowing the outcome of such an inquiry, I would prefer that this Court not address the merits of that defendant's position.

To those who argue that a complainant's sexual conduct with third parties is never admissible except as specifically provided in the rape-shield statute, the *Hackett* opinion responds that this is not so, if to exclude the evidence deprives the defendant of a proper trial. However, I interpret *Hackett* to say that in order to take the evidence out of the rape-shield statute's protection, a defendant must comply with the ten-day notice requirement even in those factual contexts that are not precisely within the very limited statutory exceptions. 421 Mich 349-350. In my view, it would make no sense to say that a defendant must give notice of the enumerated exceptions of the rape-shield statute that are matters that can easily be investigated by the prosecutor, and yet absolve the defendant from giving notice of claimed sexual conduct that requires immediate investigation in order to preserve whatever corroboration might be available. I note that *Lucas, supra,* states that the ten-day rule is particularly valid in cases where, as here, the potential for surprise to the prosecutor is a concern.

Given the fact that *Lucas* was decided by the United States Supreme Court the same day as our first opinion in this case, I am somewhat concerned that the parties may not have had an opportunity to address the Court regarding the applicability of that case to this one. *Lucas,* for example, took no position on whether the ten-day period was too short to be constitutionally valid in the particular setting of the case. It should be

remembered that *Lucas* was remanded to this Court for further consideration of that and other related questions. The Supreme Court said in *Lucas*:

> We express no opinion as to whether or not preclusion was justified in this case. The Michigan Court of Appeals, whose decision we review here, did not address whether the trial court abused its discretion on the facts before it. Rather, the Court of Appeals adopted a *per se* rule that preclusion is unconstitutional in all cases where the victim had a prior sexual relationship with the defendant. That judgment was error. We leave it to the Michigan courts to address in the first instance whether Michigan's rape shield statute authorizes preclusion and whether, on the facts of this case, preclusion violated Lucas' rights under the Sixth Amendment. [111 S Ct 1748.]

I am satisfied that my view of the ten-day rule in this case is correct because the prosecutor did not become aware of the new defense theory until trial had already begun. Nevertheless, mindful that even the most careful review of a case can miss the mark, I would invite the prosecutor or the defendant to call any error regarding this issue to our attention by means of a motion for rehearing.