## PEOPLE v POWELL

Docket No. 151214. Submitted February 17, 1993, at Lansing. Decided September 20, 1993, at 9:15 A.M. Leave to appeal sought.

Adie Powell, Jr., charged in the Genesee Circuit Court, Judith A. Fullerton, J., with first-degree criminal sexual conduct, moved in limine for the suppression of evidence obtained in a search of his home pursuant to a warrant and for the admission of evidence of the complainant's sexual history with persons other than himself. He contended that the affidavit submitted to a magistrate in support of the application for the search warrant violated a statutory requirement that an affidavit not naming the person from whom the affiant obtained information must contain affirmative allegations from which the magistrate may conclude that the unnamed source spoke with personal knowledge of the information and either that the source is credible or that the information is reliable. With regard to evidence of the complainant's sexual history, the defendant alleged that testimony indicating that the complainant was a topless dancer and was seen in the company of reputed prostitutes would establish that the complainant was a prostitute and had consented to sexual intercourse with the defendant. The trial court granted both motions. The prosecution appealed by leave granted.

The Court of Appeals *held:*

1. The trial court abused its discretion in ruling as admissible the proffered evidence that the complainant was a topless dancer and that she was seen with prostitutes. That evidence is barred by the rape-shield statute, MCL 750.520j; MSA 28.788(10), and it is more prejudicial than probative with respect to the claim that the sexual encounter between the complainant and the defendant was consensual.

2. The trial court erred in suppressing the evidence obtained with the search warrant. The affidavit submitted in support of the warrant application satisfies MCL 780.653; MSA 28.1259(3), as amended by 1988 PA 80. Pursuant to that statute, an affidavit may be based upon information supplied by a named or unnamed source. Where, as here, the source is not named, the allegations in the affidavit must show that the source is credible or that the information is reliable. In this case, a

common-sense reading of the affidavit establishes that the complainant was the source. Thus, the complainant may be considered a named source who, being the victim of the alleged crime, had personal knowledge of the facts alleged. Alternatively, if the complainant is considered an unnamed source, the reliability of the information was established by the self-authenticating details in the affidavit.

Reversed.

CORRIGAN, P.J., also stated that the trial court should have considered the prosecution's offer of proof that the affiant testified under oath at the time the warrant affidavit was presented that the complainant was the source of the allegations in the affidavit. A reconstruction of such oral testimony by the affiant, as a supplement to the affidavit, would not violate the defendant's Fourth Amendment rights and should be allowed. Finally, the exclusion of evidence for a technical violation of MCL 780.653; MSA 28.1259(3) is overly harsh under the circumstances of this case. A good-faith exception to the exclusionary rule should be recognized in this case.

McDONALD, J., concurring in part and dissenting part, agreed that the proffered evidence of the complainant's sexual history is inadmissible, but stated that the warrant affidavit is deficient under MCL 780.563; MSA 28.1259(3) and that the trial court correctly suppressed evidence seized pursuant to the warrant.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, and *Donald A. Kuebler,* Chief, Appellate Division, for the people.

*Barney R. Whitesman,* for the defendant.

Before: CORRIGAN, P.J., and SHEPHERD and McDONALD, JJ.

CORRIGAN, P.J. The people appeal by leave granted from an order granting defendant's motion to suppress evidence obtained pursuant to a search warrant and from an order granting defendant's motion to admit evidence of the victim's sexual conduct with third parties in this prosecu-

tion for criminal sexual conduct, MCL 750.520b(1)
(e); MSA 28.788(2)(1)(e). We reverse both orders.[1]

The incident underlying the charges occurred on
October 19, 1991. The victim alleged that she was
visiting defendant, a neighbor whom she had
known for approximately four to five years, at his
apartment. When the victim attempted to leave,
defendant prevented her from doing so. After
threatening her with a club, he sexually assaulted
her. Defendant contends that the victim, a prosti-
tute, consented to have sexual intercourse with
him and then falsely accused him of sexual assault
only because he failed to pay her. We address two
issues on appeal: (1) whether the court erred in
ruling admissible certain evidence pertaining to ·
the victim's sexual activities with persons other
than defendant and (2) whether the court erred in
suppressing evidence obtained pursuant to a
search warrant that was determined to be invalid.

## I. EVIDENCE OF THE VICTIM'S PRIOR CONDUCT

The court abused its discretion in ruling admis-
sible certain evidence regarding the victim's em-
ployment as a topless dancer and allegations that
the victim was a prostitute. The people contend
admission of the evidence will violate the rape-
shield statute, MCL 750.520j; MSA 28.788(10),
while defendant argues preclusion of the evidence
will violate his constitutional right to confront
witnesses. The lower court found the rape-shield
statute applicable, but ruled the evidence could be
admitted because it was "material to a fact at
issue," defendant's consent defense, and "the prej-
udicial nature [did] not outweigh its probative

---

[1] Judges Shepherd and McDonald concur in Section i; Judge
Shepherd concurs in Sections i and ii. The views stated in Section iii
of the opinion are mine alone.

value."[2] We disagree and hold that the evidence is inadmissible.

Enactment of the Michigan rape-shield statute reflected the Legislature's determination that, in the overwhelming majority of prosecutions, evidence of a rape victim's sexual conduct with parties other than the defendant, as well as the victim's sexual reputation, is neither an accurate measure of the victim's veracity nor determinative of the likelihood of consensual sexual relations with the defendant. *People v LaLone*, 432 Mich 103; 437 NW2d 611 (1989); *People v Wilhelm (On Rehearing)*, 190 Mich App 574; 476 NW2d 753 (1991); *People v Lucas (On Remand)*, 193 Mich App 298; 484 NW2d 685 (1992). Thus, the statute precludes all evidence of specific instances of a victim's sexual conduct, as well as opinion and reputation evidence of the same, except that a defendant may introduce evidence of the defendant's past sexual conduct with the victim or evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease, if the evidence is material and its prejudicial effect does not outweigh its probative value. MCL 750.520j(1); MSA 28.788(10)(1). However, recognizing that application of the statute's evidentiary exclusion might in some instances violate a defendant's Sixth Amendment right to confrontation, our Supreme Court has indicated that such evidence may be admissible when offered for the narrow purpose of showing a victim's bias or motive for filing a false claim. *People v LaLone*, *supra; People v Hackett*, 421 Mich 338; 365 NW2d 120 (1984).

---

[2] Although we recognize some jurists believe MRE 403(a)(3) to be the proper vehicle for analyzing this issue, the lower court and the parties have applied the analysis applicable to the rape-shield statute and, until a majority of our Supreme Court instructs us otherwise, we will do the same. See *People v LaLone*, 432 Mich 103; 437 NW2d 611 (1989).

In the instant case, defendant seeks the introduction of testimony by a third party that on a date before the assault he saw the victim walking with persons whom he had been informed were prostitutes and that on a date after the incident in question he viewed the victim dancing topless at a local topless club. Defendant also seeks to testify that, approximately two months after the incident, he saw the victim standing on a corner waving to passing cars while dressed in a short skirt. He contends she was engaging in what he believed to be attempts to solicit prostitution. Defendant claims this evidence is material to his defense that the victim consented to have intercourse in exchange for money. We agree that in an appropriate case a defense such as defendant's might require the admission of evidence demonstrating the victim's employment as a prostitute at the time of the alleged assault. This, however, is not the case. The majority of the evidence defendant attempts to introduce is not material to his claim that the victim was a prostitute from whom he solicited services on the date in question. A victim's employment as a topless dancer does not render her a prostitute. The offer of this evidence constitutes nothing more than an attempt to place before the jury the victim's "questionable" sexual character. Clearly, this is the type of evidence that the rape-shield statute was enacted to address.

Moreover, we find defendant's remaining evidence considerably more prejudicial than probative. The person who viewed the victim in the company of alleged prostitutes testified that he did not know whether the women were in fact prostitutes. In any event, he had never heard anything bad about the victim's reputation. Likewise, defendant's self-serving testimony that two months after the crime, he witnessed the victim allegedly

soliciting was of questionable probative value with respect to whether she had solicited him two months earlier. The court erred in ruling the proffered evidence admissible.[3]

## II. SUPPRESSION OF EVIDENCE—SUFFICIENCY OF AFFIDAVIT

We next conclude that the court erred in suppressing the fruits of the search of defendant's apartment. The crime occurred just before noon; the warrant was procured the same day. The search warrant affidavit did not explicitly state that the victim herself was the source of the information. However, a common-sense reading of the affidavit, taken as a whole, establishes that the named victim was the actual source of the allegations underlying the search warrant affidavit. A crime victim, in contrast to an underworld informant, is presumptively reliable. Additionally, the victim's reliability was proven by the self-authenticating details of the crime contained in the affidavit. Accordingly, MCL 780.653; MSA 28.1259(3), as amended by 1988 PA 80, was satisfied.

The affidavit states that the affiant, a Flint police sergeant with ten years experience, was investigating a criminal sexual conduct case earlier that day at the defendant's apartment. The affidavit then identifies the complainant by name. It stated that the complainant visited the defendant's apartment, her neighbor of four years. After talking and drinking gin with him for about forty-five minutes, the complainant asked him for her

---

[3] Because we find the evidence either irrelevant or more prejudicial than probative, we need not address whether exclusion was mandated because of defendant's apparent failure to meet the requisite ten-day notice requirement of the statute. However, we note failure to file such a notice may require the exclusion of evidence otherwise admissible under the statute. *People v Lucas, supra.*

coat. When defendant declined to get it, she went to the bedroom to look for it. Defendant subsequently grabbed the complainant from behind and threatened her with a carved wooden club. The affiant then furnished specific details of three counts of first-degree criminal sexual conduct, as well as explicit details of the crime—for example, the presence of semen on defendant's cranberry-colored robe and the bed. The affiant also described the location of items of physical evidence that the complainant and the defendant had touched. The affiant sought permission to search for these items, including the drinking glasses, the gin bottle, the brown club or stick, the cranberry-colored robe, and bed clothing.

Pursuant to MCL 780.653; MSA 28.1259(3), an affidavit may be based upon information supplied by a named or unnamed source. If the source is named, the affidavit need only contain affirmative allegations that permit the magistrate to conclude that the source had personal knowledge of the facts alleged. If the source is unnamed, allegations in the affidavit must show that the source is credible *or* that the information is reliable.

A common-sense reading of the affidavit, taken as a whole, yields the conclusion that the affiant obtained her information directly from the named crime victim. The victim was not an "unidentified informant" in the classical sense. Neither police officers nor identified crime victims are subject to the requirements once applied to confidential informers from the criminal milieu under *Aguilar/Spinelli*.[4] Indeed, the United States Supreme Court has traditionally assumed the veracity of information supplied by the victim. *Chambers v Maroney,*

[4] *Aguilar v Texas,* 378 US 108; 84 S Ct 1509; 12 L Ed 2d 723 (1964); *Spinelli v United States,* 393 US 410; 89 S Ct 584; 21 L Ed 2d 637 (1969).

399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). *Jaben v United States,* 381 US 214; 85 S Ct 1365; 14 L Ed 2d 345 (1965). Michigan courts also consider identified citizens and police officers to be presumptively reliable. See, e.g., *People v Goeckerman,* 126 Mich App 517, 522; 337 NW2d 557 (1983), and cases noted therein; *People v Harris,* 95 Mich App 507; 291 NW2d 97 (1980); *People v Emmert,* 76 Mich App 26; 255 NW2d 757 (1977). Because the rape victim was identified by name by an experienced police officer, both the officer and the victim are considered presumptively reliable. The magistrate properly concluded that the source had personal knowledge of the facts alleged.

Alternatively, if we apply the second prong of the statute, and conclude that the source is unnamed, reliability of the information is established by the self-authenticating details in the search warrant affidavit. The affiant gave a thorough and particularized description of the crime. These details alone establish reliability. *United States v Mahler,* 442 F2d 1172 (CA 9, 1971). In *McCreary v Sigler,* 406 F2d 1264, 1269 (CA 8, 1969), the Eighth Circuit Court of Appeals, in discussing the probable cause analysis for an unknown informant, recognized that reliability may be established by the nature of the facts alleged:

> Under such circumstances, reliability of an informant may best be established by the affiant relating some corroboration of the story which the informant tells. *Furthermore, the underlying circumstance (sic), even without corroboration, may have built-in credibility guides to the informant's reliability. The essence of reliability may be found in an informant's statement of facts rather than an allegation of mere conclusory suspicion.* An informant who alleges he is an "eye witness" to an actual crime perpetrated demonstrates sufficient

"reliability" of the person. . . . Probable cause for an arrest may exist where the unknown citizen makes complaints, as a victim or eyewitness to a crime, where the underlying circumstances demonstrate his firsthand knowledge. [Citations omitted; emphasis added.]

The *McCreary* court pointed out that *Aguilar/Spinelli* related only to the problems of informants from the criminal underworld and to arrests based on mere suspicion because of the target's general reputation. *Id.* at 1268. Neither situation is present in this case.

### III. SUPPRESSION OF EVIDENCE—*MITCHELL*[5] REMAND AND THE VALIDITY OF EXCLUSIONARY REMEDIES FOR STATUTORY VIOLATIONS

I write part III separately because I also conclude that the circuit court could have entertained the prosecutor's offer of proof that the affiant testified under oath at the time the warrant affidavit was presented that the rape victim herself was the source of the allegations in the affidavit.

Further, in light of the amendments contained in 1988 PA 80, the intervening federal precedent relating to the exclusionary rule, and the continuing refinement of the supervisory powers doctrine in the nine years since *People v Sherbine*, 421 Mich 502; 364 NW2d 658 (1984), was decided,[6] I question the continuing validity of *Sherbine*'s conclusion that exclusion of probative evidence is

---

[5] *People v Mitchell*, 428 Mich 364; 408 NW2d 798 (1987).

[6] See, e.g., *United States v Leon*, 468 US 897; 104 S Ct 3405; 82 L Ed 2d 677 (1984); *Illinois v Krull*, 480 US 340; 107 S Ct 1160; 94 L Ed 2d 364 (1987); *Murray v United States*, 487 US 533; 108 S Ct 2529; 101 L Ed 2d 472 (1988) (good-faith exception); see also, e.g., *Bank of Nova Scotia v United States*, 487 US 250; 108 S Ct 2369; 101 L Ed 2d 228 (1988); *United States v Mechanik*, 475 US 66; 106 S Ct 938; 89 L Ed 2d 50 (1986); *United States v Hastings*, 461 US 499; 103 S Ct 1974; 76 L Ed 2d 96 (1983) (supervisory power).

justified for a mere statutory violation. See, especially, Judge GRIFFIN's discussion in *People v Tejeda,* 181 Mich App 450, 466-467; 449 NW2d 908 (1989) *People v Tejeda (On Rehearing),* 188 Mich App 292; 469 NW2d 77 (1991); *People v Tejeda (On Remand),* 192 Mich App 635; 481 NW2d 814 (1992).

### A. ABSENCE OF FOURTH AMENDMENT VIOLATION

As a preliminary matter, I conclude that a procedure permitting reconstruction of oral testimony actually heard by the authorizing magistrate would not offend the Fourth Amendment. *Aguilar v Texas,* 378 US 108, 109, n 1; 84 S Ct 1509; 12 L Ed 2d 723 (1964), recognized that in assessing the validity of a warrant, a reviewing court should consider *only* information brought to the magistrate's attention. *Whiteley v Warden,* 401 US 560, 565, n 8; 91 S Ct 1031; 28 L Ed 2d 306 (1971), suggests that an otherwise insufficient affidavit can be rehabilitated by sworn oral testimony presented during the warrant application process. By contrast, an insufficient affidavit can never be rehabilitated if the information was not disclosed to the issuing magistrate. These precautions guarantee that the central purpose of the Fourth Amendment will be served. That is, a neutral and detached magistrate reviews an investigator's determination of probable cause.

The United States Supreme Court, however, has not directly decided whether and under what circumstances oral information can supplement a written search warrant affidavit. Numerous federal circuit courts, however, have held that the Fourth Amendment does not require a written sworn statement supporting the application for a search warrant. The government may prove that the issuing magistrate had oral information, apart

from the allegations in the affidavit, to authorize issuance of the search warrant. *United States v Hill,* 500 F2d 315, 320-321 (CA 5, 1974); *United States ex rel Gaugler v Brierley,* 477 F2d 516, 522-523 (CA 3, 1973); *Frazier v Roberts,* 441 F2d 1224, 1226 (CA 8, 1971); *Sherrick v Eyman,* 389 F2d 648, 652 (CA 9, 1968). Nor is recording of the oral information required by the Fourth Amendment. The magistrate's duty is to take testimony under oath, whether or not that testimony is preserved for later review. *United States v Goyett,* 699 F2d 838 (CA 6, 1983). See, generally, LaFave, *Search and Seizure,* § 4.3(b); anno: *Federal court determination of probable cause for search warrant: consideration of oral testimony which was, in addition to affidavit, before officer who issued warrant.* 24 ALR Fed 107.

In *United States v Hill, supra* at 322, the Fifth Circuit Court of Appeals allowed supplementation of the affidavit with oral testimony and declined to exclude relevant evidence:

> [T]his situation furnishes no occasion to apply the exclusionary rule to bar the evidence of Hill's criminality that was obtained in executing the warrant. Phillips acted properly in going to the magistrate and seeking a warrant. Magistrate Sear acted properly in calling for additional information to demonstrate credibility. Thus, the only error attributable to the procedure they followed is a technical one that would in no way serve the deterrent purposes of the rule.

See also *United States v Williams,* 622 F2d 830 (CA 5, 1980).

### B. REMAND TO RECONSTRUCT ORAL TESTIMONY

In response to *People v Sherbine, supra,* the

Legislature, in 1988 PA 80, amended the search warrant statute, MCL 780.653; MSA 28.1259(3). The Legislature repudiated *Sherbine's* conclusion that the statute had codified and expanded the *Aguilar/Spinelli* test. (In *Sherbine,* this construction of the statute allowed the Supreme Court to avoid deciding whether Michigan followed *Illinois v Gates,* 462 US 213; 103 S Ct 2317; 76 L Ed 2d 527 [1983].) The current statutory test is now far more lenient than the former wooden and inflexible *Aguilar/Spinelli* test. The Legislature certainly did not contemplate the situation at hand when it amended the statute in response to *Sherbine.* Nor did the Legislature choose suppression as a remedy for technical violations of the statute or foreclose remands to reconstruct testimony actually presented to the examining magistrate. See *Tejeda, supra* at 464.

Even more significantly, after *Sherbine* was decided, the Supreme Court in *People v Mitchell,* 428 Mich 364; 408 NW2d 798 (1987), directed a remand to reconstruct oral testimony actually heard by the authorizing judge. In *Mitchell,* the defect involved was an unsigned search warrant. *Id.* at 366. I see no principled reason to deny a *Mitchell*-type remand in these circumstances. Such a remedy is especially appropriate because the search warrant and affidavit in this case explicitly state that the affiant was examined under oath before the magistrate. The first sentence of the search warrant states, in relevant part, "*On examination on oath and in writing of the affiant* . . . and after reading and evaluating the affidavit . . . ."

### C. EXCLUSIONARY REMEDY FOR STATUTORY VIOLATIONS

Suppression of seized evidence, a judge-made

remedy designed to deter violations of the Fourth Amendment, is too harsh a remedy for the deficient search warrant draftsmanship depicted by these facts. A technical violation of the Michigan search warrant statute should not require exclusion of probative evidence in the absence of an explicit legislative directive. *Sherbine's* sole justification for an exclusionary remedy for statutory violations is a reference to *People v Chartrand,* 73 Mich App 645; 252 NW2d 569 (1977), in a footnote. See 421 Mich 511-512, n 18. The Supreme Court did not so much as discuss *Chartrand. Chartrand,* in turn, at 652, does not discuss, much less attempt to justify, why suppression of probative evidence is warranted for a mere statutory violation.

The Supreme Court's failure to discuss this difficult question in *Sherbine* is troubling. The issue of the Supreme Court's authority to suppress evidence for statutory violations is significant and complex. Indeed, the Supreme Court may lack the authority to impose an exclusionary remedy for a statutory violation. See, e.g., Beale, *Reconsidering supervisory power in criminal cases: Constitutional and statutory limits on the authority of federal courts,* 84 Columbia L R 1433 (1984). Professor Beale examines cases where the United States Supreme Court declined to apply requested remedies for statutory violations because Congress had not explicitly authorized those remedies. Professor Beale explores the separation-of-powers problems in the judicial usurpation of unexercised legislative powers to fashion remedies for purely statutory violations. Her well-developed analysis raises similar questions about Michigan's scheme. See also *Tejeda, supra* at 461-467 (GRIFFIN, J., dissenting).

Moreover, an exclusionary remedy is cruel and

disproportionate in these circumstances. Physical evidence corroborating the commission of a serious crime would be suppressed so that this investigator will be deterred from future "misconduct." The theory is that, through this punishment, the detective would learn to inform judges in the future *in writing* about the actual source of the allegations. As noted, the Fourth Amendment itself does not command a written submission.

In *Michigan v Tucker*, 417 US 433; 94 S Ct 2357; 41 L Ed 2d 182 (1974), the Supreme Court recognized that the deterrent purposes of the exclusionary rule assume that the police have engaged in wilful or negligent conduct that has deprived the defendant of some right. The remedy ignores the prospect of unjust acquittal on the theory that the lesson to offending police officers is worth the high cost. In this case, the violation is de minimis, but the cost is extreme. The disproportionate nature of the punishment is even more extreme if the investigator actually informed the district judge about the source of the allegations. The detective complied with the Fourth Amendment by applying for a warrant. She apparently acted in complete good faith.

The deterrence rationale has no force whatsoever in this setting. The investigator did not engage in misconduct worth deterring in a rational society. The "error" attributable to the police procedure was technical. I am unwilling to equate the slight human imperfection in draftsmanship depicted here in the "midst and haste of a criminal investigation" with misbehavior warranting the drastic remedy of suppression. Far from advancing the deterrent purposes of the exclusionary rule, exclusion of this evidence promotes public disrespect for the legal process.

The Supreme Court has recognized a good-faith

exception for constitutional violations in obtaining a search warrant. *United States v Leon,* 497 US 897, 903, n 1; 104 S Ct 3405; 82 L Ed 2d 677 (1984). If judicial power to suppress for statutory violations does exist in Michigan, then Michigan judges should surely recognize a good-faith exception for the statutory violation at issue.

Reversed; jurisdiction not retained.

SHEPHERD, J., concurred with parts I and II only.

McDONALD, J. *(concurring in part and dissenting in part).* Although I concur with part I of Judge CORRIGAN's opinion, I respectfully dissent from the balance of the opinion.

The people concede the affidavit relied on in issuing the search warrant failed to satisfy the requirements of MCL 780.653; MSA 28.1259(3). Although the affidavit contained thorough, specific, and particularized facts, it failed to name the source of the information. Even though it appears obvious the information was obtained from the victim and that the magistrate was so informed, the statutory language is mandatory and unambiguous. It states the finding of probable cause "shall be based upon all the facts related *within* the affidavit" (emphasis added) and, if the affidavit is based upon information supplied by an unnamed person, it must contain

> affirmative allegations from which the magistrate may conclude that the person spoke with personal knowledge of the information and either that the unnamed person is credible or that the information is reliable. [MCL 780.653(b); MSA 28.1259(3)(b).]

Violation of the statute results in suppression of the evidence obtained pursuant to the warrant.

*People v Sherbine,* 421 Mich 502; 364 NW2d 658
(1984). Although suppression of the evidence seems
to be a harsh remedy in this case, I do not believe
we are at liberty to ignore the directives set forth
in the opinions of our Supreme Court. I would hold
the trial court did not err in granting defendant's
motion to suppress.