*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

MICHAEL JOSEPH AMENITSCH,

        Defendant-Appellant.

UNPUBLISHED
September 12, 2024

No. 365261
Berrien Circuit Court
LC No. 2022-000203-FH

Before: N. P. HOOD, P.J., and O'BRIEN and REDFORD, JJ.

PER CURIAM.

Defendant, Michael Joseph Amenitsch, appeals as of right his jury convictions of two counts of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) and MCL 750.520c(2)(b). The trial court sentenced Amenitsch to serve concurrent terms of 4 to 15 years' imprisonment. On appeal, he argues that the prosecution committed misconduct by (1) presenting crime statistics that had not been testified about at trial, (2) improperly appealing to the jury's emotions during closing arguments, and (3) referring to the complaining witness, LR, as "the victim" during jury selection. Amenitsch also argues that the trial court abused its discretion when it prohibited him, under the rape-shield statute, MCL 750.520j, from obtaining and introducing evidence related to an incident during which LR sent sexually explicit photographs to an unknown third party. Amenitsch contends that this evidentiary ruling deprived him of his constitutional right to present a defense. We affirm.

## I. BACKGROUND

This case arises from Amenitsch's sexual assault of LR in April 2021. LR was 12 years old at the time. Amenitsch assaulted LR when she was visiting Amenitsch's home with her half brother, who is Amenitsch's biological son. Although Amenitsch was not LR's father and did not have custody of her, she routinely spent time with him when her brother visited.

During this particular visit with Amenitsch, LR fell asleep on the couch in the living room, and Amenitsch carried her to her bedroom. According to LR, once they were in her bedroom, he laid down beside her on the bed, kissed her ear and neck, and slid his hand underneath her shorts, along her upper, inner thigh until he reached the lining of her underwear. LR also alleged that,

during the same incident, Amenitsch reached inside her shirt and touched her bare breast. After Amenitsch left the room, LR sent an e-mail to her mother telling her to call the police. She did not call the police herself because Amenitsch had previously confiscated her phone to discipline her.

Following a report of this incident to law enforcement, the prosecution charged Amenitsch with two counts of CSC-II (defendant 17 years of age or older; victim under 13 years of age).

Shortly before trial, Amenitsch sought information from the police regarding a sexting incident involving LR. In February 2021, Amenitsch confiscated LR's cell phone and discovered that she had sent sexually explicit photographs of herself to an unknown third party. At the time of this discovery, Amenitsch reported the messages to the police, and an investigation followed. Six days before trial (and several months after his arraignment) in the instant case, Amenitsch faxed a subpoena to law enforcement seeking information related to this incident, which the parties referred to as the "sexting incident." The subpoena requested all police reports, communications, materials, investigations, forensic phone downloads, photographs, body-camera recordings, station recordings, and other documents related to the sexting incident. On the same day, the prosecution filed an emergency motion in limine requesting that the trial court (1) quash the subpoena, and (2) preclude the defense from admitting any evidence of the sexting incident and subsequent investigation at trial. The prosecution argued that these requests were proper because (1) Amenitsch's subpoena was untimely, (2) Amenitsch's subpoena requested evidence of specific instances of LR's "sexual conduct" in violation of Michigan's rape-shield statute, and (3) Amenitsch failed to file a written motion, including an offer of proof, within 10 days following his arraignment on the current charges as required by MCL 750.520j(2).

At a hearing on the prosecution's motion, Amenitsch informed the trial court that he did not seek the contents of the text messages exchanged between LR and the unknown third party, noting that, to the extent that the sexually abusive material was present in the forensic download of her cell phone, the material was not requested. He clarified that he was withdrawing his request for the forensic download of LR's cell phone and photographs or other recordings discovered during the investigation into the sexting incident. Amenitsch still requested that the trial court not quash his request for the police report and communications related to the investigation. The trial court ordered the prosecution to provide a copy of the police report related to the sexting incident for *in camera* review.

Following its review, the trial court issued an order granting in part and denying in part the prosecution's emergency motion in limine. Relevant here, the order quashed Amenitsch's request for communications, materials, investigations, forensic phone downloads, and photographs related to the sexting incident. Just before the start of trial, the parties stipulated that neither side would present evidence of either the police investigation or the contents of LR's cell phone. Instead, defense counsel would be permitted to introduce evidence establishing that Amenitsch confiscated LR's cell phone in February 2021 as punishment after she got into trouble.

At trial, the prosecution presented testimonial and physical evidence of the assault. LR testified about Amenitsch assaulting her and contacting her mother to contact the police. The prosecution also presented DNA evidence corroborating her testimony. Specifically, following the assault, LR's mother took her to the hospital, where she submitted to a sexual assault nurse

examiner (SANE) examination.  During the SANE exam, medical staff collected DNA swabs from LR's ear, neck, breast, and underwear.  Investigators also collected DNA swabs from Amenitsch.  Forensic analysis revealed that the DNA swab from LR's neck indicated a possible presence of male DNA.  Further testing indicated that it was 590 septillion times more likely that the sample originated from LR and Amenitsch than from LR and another individual.  Analysis also indicated that, on the basis of the amount of male DNA discovered, the male contributor was not consistent with casual contact.

During jury selection and trial, the prosecutor made several statements that Amenitsch challenges on appeal.  First, the prosecutor referred to LR as the "victim," instead of "complainant," or "complaining witness" approximately 13 times over the course of jury selection.  Most of these references occurred while engaging with prospective jurors about their own experiences.  The defense did not object to these references.

Then, during closing arguments, the prosecution referenced statistics that were not in evidence.  During her argument, the prosecutor stated that LR "gets to be a statistic now, one of the 25 percent of young women who are now victims[.]"  Amenitsch objected to this statement, and the trial court sustained the objection on the ground that there was no evidence on the record supporting that statistic.

During closing arguments, the prosecution also stated:

Look, it's not easy to be in your shoes.  It's not easy to hear these facts.  They are part of your life now too, and you didn't ask for any of this just like [LR] didn't ask for any of this.  The only difference is [LR] had to live it.

And to add insult to injury, besides going through what she went through on April 29th, 2021, she had to come into court, be feet away from the man did this to her, tell a group of strangers what happened again.  She had to talk about the worst night of her life and be called a liar for it.

And even after all of this she's going to have to walk out of this building.  She's not only going to carry the memory from April 29th, she's going to carry the memory from this trial too.  I'm asking you to give her some other memory to carry along with that.  Give her a new one.  Give her one where she told you what happened and you said yes [LR], we believe you.

Give her one that says telling is worth it.  Please tell her it should only have been a kiss goodnight and find the defendant guilty.

The defense did not object to this line of argument.

Following the three-day jury trial, the jury found Amenitsch guilty of both counts.  The trial court sentenced him as earlier stated.  This appeal followed.

## II. PROSECUTOR CONDUCT[1]

Amenitsch first argues that the prosecution committed misconduct warranting reversal of his convictions by: (1) presenting crime statistics that had not been testified about at trial, (2) improperly appealing to the jury's emotions during closing arguments, and (3) referring to LR as "the victim" during jury selection. He also argues that, even if these errors individually do not warrant reversal, the cumulative effect of the errors does. We disagree.

We review claims of prosecutorial misconduct "de novo to determine whether the defendant was denied a fair and impartial trial." *People v Bennett*, 290 Mich App 465, 475; 802 NW2d 627 (2010). Prosecutorial misconduct is a nonstructural error. *People v Abraham*, 256 Mich App 265, 276; 662 NW2d 836 (2003). When preserved, it is subject to harmless-error review. *Id.* Such an error is harmless, and does not warrant reversal, if "it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." *People v Mass*, 464 Mich 615, 640 n 29; 628 NW2d 540 (2001) (quotation marks and citation omitted). We review unpreserved errors for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). As stated in *People v Brown*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 359376) (N. P. HOOD, J., concurring); slip op at 3:

> To obtain relief under the plain-error rule, a defendant must prove that (1) an error occurred, (2) the error was plain, and (3) that the plain error affected substantial rights—in other words, the error affected the outcome of the proceedings. *People v Anderson*, 341 Mich App 272, 280; 989 NW2d 832 (2022). If a defendant satisfies these three requirements, we must determine whether the plain error warrants reversal, in other words, whether it seriously affected the fairness, integrity, or public reputation of the judicial proceedings independent of the defendant's innocence. *Carines*, 460 Mich at 763-764. Sometimes identified as a fourth prong of plain-error analysis, this last step conceptually overlaps with the third prong. [*People v Davis*, 509 Mich 52, 75-76; 983 NW2d 325 (2022).].

The prosecution commits misconduct if it abandons its "responsibility to seek justice and, in doing so, denied the defendant a fair and impartial trial." *People v Lane*, 308 Mich App 38, 62; 862 NW2d 446 (2014). A defendant's right to a fair trial can be denied when the prosecution makes improper remarks that "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (brackets omitted). See also *Darden v Wainwright*, 477 US 168, 181; 106 S Ct 2464; 91 L Ed 2d 144 (1986). This Court evaluates "instances of prosecutorial misconduct on a case-by-case basis, reviewing the prosecut[ion]'s comments in context and in light of the defendant's arguments." *Lane*, 308 Mich App at 62-63.

---

[1] Although the term "prosecutorial misconduct" has become a term of art often used to describe any error committed by the prosecution, claims of inadvertent error by the prosecution are "better and more fairly presented as claims of 'prosecutorial error,' with only the most extreme cases rising to the level of 'prosecutorial misconduct.' " *People v Jackson (On Reconsideration)*, 313 Mich App 409, 425 n 4; 884 NW2d 297 (2015), quoting *People v Cooper*, 309 Mich App 74, 87-88; 867 NW2d 452 (2015).

"The burden of proving beyond a reasonable doubt each and every element within the definition of the crime charged remains steadfastly on the shoulders of the prosecution." *People v Mette*, 243 Mich App 318, 330; 621 NW2d 713 (2000). Therefore, the prosecution "is free to argue the evidence and all reasonable inferences arising from it as they relate to [its] theory of the case." *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007). The prosecution need not state its inferences in the blandest possible terms, *id.*, or use the least prejudicial evidence available to establish a fact at issue, *People v Fisher*, 449 Mich 441, 452; 537 NW2d 577 (1995).

## A. ARGUMENT NOT SUPPORTED BY RECORD EVIDENCE

First, Amenitsch argues that the prosecutor's statement in closing argument that the victim "gets to be a statistic now, one of the 25 percent of young women who are now victims," was prosecutorial misconduct because the prosecutor argued facts not in evidence. On appeal, the prosecution concedes that its remark concerning sexual assault statistics (and linking those statistics to the victim) was not made on the basis of record evidence. We agree that this part of the prosecution's argument was improper because it was not supported by evidence presented to the jury during trial. See *People v Unger*, 278 Mich App 210, 241; 749 NW2d 272 (2008).[2] But, because the error was isolated and because the trial court instructed the jury to disregard arguments not rooted in evidence, we conclude that the error does not warrant reversal.

The prosecution "may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Id.* However, even if a comment is improper, a defendant is not entitled to reversal of his convictions if "any prejudicial effect could have been dispelled by a timely objection and curative instruction." *Id.* But improper commentary by the prosecution does not necessarily warrant reversal of a defendant's convictions when "[t]he comment was brief and isolated, and an appropriate instruction upon timely objection could have cured any perceived prejudice." *People v Smith*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 362114); slip op at 14 (citation omitted).

The prosecutor's remark regarding sexual assault statistics was the only identified instance in which the prosecution made an argument to the jury that was not supported by record evidence. It was brief and isolated in nature. Further, although the trial court did not provide a curative instruction at the time of the objection, during final jury instructions, the trial court provided the pattern instruction that the "lawyers' statements and arguments are not evidence." Because "[j]urors are presumed to follow the instructions of the court," this instruction likely dispelled any prejudicial effect the prosecution's improper commentary had. *People v Meissner*, 294 Mich App

---

[2] Amenitsch only argues that this was prosecutorial misconduct because the prosecutor argued facts not in evidence. He does not appear to argue that the information, if properly supported, would be inadmissible. We assume without deciding that such a statistic, though not necessarily inaccurate, see U.S. Centers for Disease Control and Prevention, *About Sexual Violence* <https://www.cdc.gov/sexual-violence/about/index.html> (accessed August 27, 2024), citing U.S. Centers for Disease Control and Prevention, *National Intimate Partner and Sexual Violence Survey* <https://www.cdc.gov/nisvs/documentation/nisvsReportonSexualViolence.pdf> (accessed August 27, 2024), would nonetheless be inadmissible under MRE 403.

438, 457; 812 NW2d 37 (2011).  See also *Weeks v Angelone*, 528 US 225, 234; 120 S Ct 727; 145 L Ed 2d 727 (2000).  We therefore conclude that an error occurred, it was plain, but Amenitsch was not prejudiced and is not entitled to reversal of his convictions on this basis.

## B.  APPEALS TO SYMPATHY

Second, Amenitsch argues that the prosecution made improper appeals to the jurors' sympathies.  While parts of the prosecution's arguments approached direct appeals to sympathy, we conclude that these arguments were not so egregious as to warrant reversal.  And when combined with the trial court's pattern instructions, regarding deciding the case on facts, not sympathy, Amenitsch suffered no discernable prejudice.

The prosecution "may not vouch for the credibility of a witness by conveying to the jury that [it] has some special knowledge that the witness is testifying truthfully." *People v Clark*, 330 Mich App 392, 434; 948 NW2d 604 (2019).  However, the prosecution may "argue from the facts that a witness is worthy of belief." *Id.*  Moreover, "[e]motional language may be used during closing argument and is an important weapon in counsel's forensic arsenal." *People v Ullah*, 216 Mich App 669, 679; 550 NW2d 568 (1996) (quotation marks and citation omitted).  It is, however, "improper for [the] prosecut[ion] to appeal to the jury's sympathy for the victim." *Meissner*, 294 Mich App at 456.  The prosecution's "comments are to be evaluated in light of defense arguments and the relationship the comments bear to the evidence admitted at trial." *Id.* (quotation marks and citation omitted).  "Otherwise improper prosecutorial remarks generally do not require reversal if they are responsive to issues raised by defense counsel." *People v Schutte*, 240 Mich App 713, 721; 613 NW2d 370 (2000).  In addition to this, "[c]urative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, jurors are presumed to follow their instructions." *Unger*, 278 Mich App at 235 (citations omitted).  Therefore, "[n]o error requiring reversal will be found if the prejudicial effect of the prosecut[ion]'s comments could have been cured by a timely instruction." *Id.*

During closing arguments, the prosecution made several statements that we could read as appeals to sympathy.  At one point it placed the jury in LR's shoes, stating that it was "not easy to hear" the facts of the case, that the jury "didn't ask for any of this just like L.R. didn't ask for this," and noting that LR had to live it.  The prosecutor also emphasized the difficulty of LR testifying about the assault before "a group of strangers," noting that she had to talk about "the worst night of her life and be called a liar for it."  Finally, the prosecutor suggested the jury had some agency in healing LR: "I'm asking you to give her some other memory . . . Give her one where she told you what happened and you said yes [LR], we believe you."  These lines of argument undoubtedly had an emotional appeal.

Although the prosecution is permitted to employ emotional language during closing arguments, this line of argument by the prosecution tends to appeal to the jury's sympathy for LR by focusing on the difficulties that LR faced by having to testify at trial against Amenitsch and the way that the jury could alleviate some of her suffering.  But on some level, the prosecution's arguments were in response to the defense theory that LR was lying about what occurred that night.  And defense counsel did not object to this argument when the prosecution presented it, meaning the trial court did not have an opportunity to provide an immediate curative instruction.  Nonetheless, during final instructions, the trial court instructed the jury that it "must not let

sympathy, bias, or prejudice influence [its] decision." Therefore, although the prosecution's argument could be construed as improperly appealing to the jury's sympathy for LR, the potential prejudicial effect of that argument was dispelled by final jury instructions and could have been further alleviated by a timely objection by the defense and prompt curative instruction by the trial court. Accordingly, Amenitsch is not entitled to reversal of his convictions on this basis.

## C. REFERRING TO LR AS THE "VICTIM"

Relatedly Amenitsch argues that the prosecutor's reference to LR as a "victim" during jury selection was misconduct warranting reversal. We disagree. We acknowledge that referring to complainants in criminal matters as victims prior to a finding of guilt potentially implicates the presumption of innocence. See *People v Jacobs*, unpublished per curiam opinion of the Court of Appeals, issued February 16, 2023 (Docket No. 358738), p 4.[3] But there is no Michigan caselaw prohibiting such references. See *id.* And more importantly, our statutory scheme appears to allow it. Cf. MCL 750.520a(s). MCL 750.520a(s) defines "victim" as "the person alleging to have been subjected to criminal sexual conduct." Here, Amenitsch was charged with two counts of CSC-II on the basis of inappropriate conduct with the complaining witness, LR. Because LR was alleging to have been subjected to criminal sexual conduct, the prosecution was entitled, under MCL 750.520a(s), to refer to her as the "victim." Amenitsch therefore is not entitled to reversal of his convictions on this basis.

## D. CUMULATIVE ERROR

Finally, we conclude that the cumulative effect of these errors does not warrant reversal. The cumulative effect of alleged errors is reviewed "to determine if the combination of alleged errors denied defendant a fair trial." *People v Knapp*, 244 Mich App 361, 387; 624 NW2d 227 (2001). The cumulative effect of several minor errors may warrant reversal even when isolated errors in the case would not warrant reversal. *Id.* at 388. However, "the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. Therefore, "[i]n order to reverse on the grounds of cumulative error, the errors at issue must be of consequence," meaning that "the effect of the errors must have been seriously prejudicial in order to warrant a finding that defendant was denied a fair trial." *Knapp*, 244 Mich App at 388.

As noted earlier, although the prosecution did present some improper commentary during closing arguments, the comments were brief and isolated. The trial court's final instructions, specifically those regarding evidence and sympathies, likely cured any prejudicial effect stemming from the improper remarks. Considering this, and the fact that the prosecution did not commit misconduct by referring to LR as the victim, the cumulative effect of these errors does not rise to the level of warranting reversal.

---

[3] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307, 911 NW2d 219 (2017) (citation omitted).

This is particularly true in light of the other evidence of Amenitsch's guilt. Separate from any real or purported misconduct, the prosecution presented evidence that Amenitsch's DNA was discovered on LR's earlobe, corroborating her testimony about the assault. Further, LR provided detailed testimony about what occurred, consistent with the information that she provided to law enforcement and the SANE the night of the incident. To refute the allegations, Amenitsch advanced a theory that LR was lying about the allegations. This theory was premised on the idea that LR was angry with Amenitsch for confiscating her cell phone over two months before the incident occurred. Given the amount of evidence presented to establish his guilt and the distant connection between the confiscation of LR's cell phone and the incident, the minor improper remarks by the prosecution were not of consequence in this case. There was sufficient evidence for the jury to find Amenitsch guilty, and the prosecution's appeal to the jurors' sympathy was unlikely to sway them to convict Amenitsch if they would have otherwise acquitted him. Therefore, we conclude that Amenitsch was not deprived of his constitutional right to a fair trial.

## III. ADMISSIBILITY OF EVIDENCE

Amenitsch also argues that the trial court abused its discretion by excluding from evidence the contents of LR's cell phone and the reason her cell phone was confiscated. He contends that this evidentiary ruling denied him his constitutional right to present a defense. We disagree.

Generally, "the decision whether to admit evidence is within the trial court's discretion and will not be disturbed absent an abuse of that discretion." *People v McDaniel*, 469 Mich 409, 412; 670 NW2d 659 (2003). However, an unpreserved error is reviewed for plain error. *Carines*, 460 Mich at 763.

The record reflects that Amenitsch intended to advance a theory at trial that LR made false allegations against him because she was angry with him for confiscating her cell phone a few months beforehand. Days before trial, Amenitsch subpoenaed records related to the police investigation of the sexting incident. He ultimately withdrew the subpoena and stipulated that he would not introduce evidence of the reasons he confiscated LR's phone (i.e., that she was sexting), but only evidence of the fact that he had confiscated the phone as punishment. His stipulation, however, followed the trial court's decision that the sexting was covered under the rape-shield statute and therefore not admissible.

At the threshold, we reject the prosecution's argument that Amenitsch waived this issue by withdrawing his request to subpoena evidence related to LR's sexting and stipulation that he would not seek to introduce such evidence. "Waiver has been defined as the intentional relinquishment or abandonment of a known right." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citation omitted). If a defendant waives his right, he is precluded from thereafter seeking appellate review of a claimed deprivation of that right. *Id*. A party cannot request a certain action of the trial court, stipulate to a matter, or waive objection to an issue and then argue on appeal that the resultant action was erroneous. See *People v Aldrich*, 246 Mich App 101, 111; 631 NW2d 67 (2001). Amenitsch's decision to withdraw his subpoena and stipulation not to introduce evidence related to the sexting incident would ordinarily constitute waiver. Here, however, the trial court granted the prosecution's emergency motion in limine, concluding that the sexting incident fell within the scope of the rape-shield statute. This order precluding admission of this evidence at trial came before Amenitsch agreed to not present any evidence related to the

reason that LR's cell phone was confiscated.  Therefore, he did not waive all objections to the trial court's ruling on the admissibility of this evidence under the rape-shield statute.

Amenitsch, however, loses on the merits.  He argues that the sexting incident did not constitute "sexual conduct" and, therefore, did not fall within the purview of the rape-shield statute.  We disagree.  The rape-shield statute, MCL 750.520j, provides:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:
>
> (a) Evidence of the victim's past sexual conduct with the actor.
>
> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease.

To determine whether the sexting incident fell within the purview of the rape-shield statute, we must first determine what the definition of "sexual conduct" is in this context.  The rape-shield statute does not define "sexual conduct."  *See People v Masi*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 358922); slip op at 3.  This Court recently consulted the dictionary definitions of "sexual" and "conduct" to aid in its interpretation of "sexual conduct" employed in the rape-shield statute.  *Id*. at ___; slip op at 3.  There, we held that the complaining witness's viewing of pornography was conduct not covered by the rape-shield statute.  See *id.* at ___; slip op at 3-5.  In doing so, this Court employed the definition of "sexual" as " 'of, relating to, or associated with sex or the sexes' or 'having or involving sex.' "  *Id*. at ___; slip op at 3, quoting *Merriam-Webster's Collegiate Dictionary* (11th ed).  This Court further defined "conduct" as " 'a mode or standard of personal behavior especially as based on moral principles' or 'the act, manner, or process of carrying on.' "  *Id*., quoting *Merriam-Webster's Collegiate Dictionary* (11th ed).  Applying this definition, this Court held that "[e]vidence that a victim viewed lawful pornography, without more, is not "sexual conduct" subject to the exclusionary bar of the rape-shield statute."  *Masi*, ___ Mich App at ___; slip op at 3.  See also *id.* at ___; slip op at 3 ("[W]hile lawful pornography traditionally involves images or videos of individuals engaged in sexual activity, it does not necessarily follow that the individual watching the pornography is engaged in sexual conduct.  Particularly with minor victims, viewing pornography could be evidence of a variety of things, including curiosity or accident, that are not sexual in nature.").

Relying on the definition in *Masi*, we conclude that the sexting incident constituted "sexual conduct."  The record reflects that the text messages that LR shared with an unknown third party contained sexually explicit images of her.  Although this does not pertain directly to sexual intercourse, it is nevertheless sexual in nature and constitutes an action on behalf of LR.  Unlike the *viewing* of pornography at issue in *Masi*, which might have been passive, accidental, or the result of curiosity, here, the conduct involved LR generating a depiction of herself engaged in sexually explicit conduct, then *sending* it to someone else.  This is squarely within the definition

of "sexual conduct." See *id*. at ___; slip op at 4-5. See also MCL 750.520j(1). The trial court did not err by reaching this conclusion. Further, the sexting incident did not fall within other exceptions within the rape-shield statute because it did not depict LR's sexual conduct with Amenitsch, nor did it show the source or origin of semen, pregnancy, or disease. See MCL 750.520j(1). Accordingly, it was inadmissible under the rape-shield statute, and the trial court properly determined so.

We also observe that Amenitsch failed to file a timely motion to admit evidence of the sexting incident. MCL 750.520j(2) provides that, if a defendant proposes to offer evidence under the purview of the rape-shield statute, then he must, within 10 days following his arraignment, file a written motion and offer of proof. Failure to meet the requisite 10-day notice requirement of the statute "may require the exclusion of evidence otherwise admissible under the statute." *People v Powell*, 201 Mich App 516, 521 n 3; 506 NW2d 894 (1993). When a defendant does not comply with the statutory notice provision, the trial court should consider the timing of the defendant's offer to produce evidence, noting that "[t]he closer to the date of trial the evidence is offered, the more this factor suggests wilful misconduct designed to create a tactical advantage and weighs in favor of exclusion." *People v Lucas (On Remand)*, 193 Mich App 298, 303; 484 NW2d 685 (1992).

Here, Amenitsch failed to comply with these requirements. His arraignment on the charged offenses was held on February 1, 2022. But Amenitsch faxed a subpoena requesting the documents related to the investigation from law enforcement on August 25, 2022. He therefore did not request the documents related to the investigation until several months after his arraignment. Further, Amenitsch did not file a motion with the trial court seeking admission of this evidence and providing an offer of proof. Despite the fact that he was aware of the existence of these investigative documents well before his arraignment took place, he failed to file any motion with the trial court related to those documents and instead requested them merely a few days before trial was set to begin. "Absent a sufficient showing of relevancy in the offer of proof, the motion for admission, whether presented at trial or in limine, must be denied." *People v Byrne*, 199 Mich App 674, 678; 502 NW2d 386 (1993). Therefore, not only did the trial court properly determine that evidence of the sexting incident fell within the rape-shield statute, but Amenitsch's failure to comply with the notice requirements provided an additional justification for exclusion of the evidence.

Amenitsch further argues that the trial court's decision to exclude evidence of the contents of LR's cell phone and the reason that it was confiscated denied him of his constitutional right to present a defense. We disagree. "A defendant has a constitutionally guaranteed right to present a defense[;]" however, "this right is not absolute" because a defendant "must still comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *People v Zitka*, 335 Mich App 324, 332-333; 966 NW2d 786 (2020) (quotation marks and citation omitted). "Accordingly, the right to present a defense extends only to relevant and admissible evidence." *People v Solloway*, 316 Mich App 174, 198; 891 NW2d 255 (2016) (quotation marks and citation omitted). The rules of evidence "do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve." *Unger*, 278 Mich App at 250 (quotation marks and citation omitted).

"The rape-shield statute constitutes a legislative policy determination that sexual conduct or reputation regarding sexual conduct as evidence of character and for impeachment, while perhaps logically relevant, is not legally relevant." *People v Sharpe*, 502 Mich 313, 326; 918 NW2d 504 (2018) (quotation marks and citation omitted). "It also reflects the Legislature's belief that inquiries into sex histories, even when minimally relevant, carry a danger of unfairly prejudicing and misleading the jury." *Masi*, ___ Mich App at ___; slip op at 10. Therefore, "the evidentiary guardrails imposed by the rape-shield statute are not arbitrary, nor are they disproportionate to the important purposes they serve." *Id.*

As stated, the trial court did not err by excluding evidence of the sexting incident. Moreover, at the hearing on the prosecution's emergency motion in limine, Amenitsch argued that the evidence was relevant to establish LR's motive to fabricate the allegations. With the relevancy of the sexting incident relying solely on Amenitsch's ability to show that LR had a motive to lie, it is unclear what in the police investigation of the sexting incident would have been particularly pertinent to present to the jury. Although the reason that LR's cell phone was confiscated could have provided a stronger motive for her to lie, Amenitsch was still able to present the same defense. Therefore, despite the exclusion of the content of the sexting incident, Amenitsch still had an opportunity to present his defense. Accordingly, Amenitsch was not deprived his constitutional right to present a defense.

We affirm.

/s/ Noah P. Hood
/s/ Colleen A. O'Brien
/s/ James Robert Redford